No. 15-20711

# 𝕴𝖓 𝖙𝖍𝖊 𝖀𝖓𝖎𝖙𝖊𝖉 𝕾𝖙𝖆𝖙𝖊𝖘 𝕮𝖔𝖚𝖗𝖙 𝖔𝖋 𝕬𝖕𝖕𝖊𝖆𝖑𝖘
# 𝖋𝖔𝖗 𝖙𝖍𝖊 𝕱𝖎𝖋𝖙𝖍 𝕮𝖎𝖗𝖈𝖚𝖎𝖙

RAYMOND RICHARDSON; JUDITH GOTT; ANGELA KOLMANSBERGER; JAMES CHAPLIN; LUCY GONZALES; DONNA LYNN PONTELLO; BILL EARLY

*Plaintiffs-Appellants*

v.

WELLS FARGO BANK, N.A.; WACHOVIA MORTGAGE CORPORATION; WACHOVIA CORPORATION; WORLD MORTGAGE COMPANY, ALSO KNOWN AS WORLD MORTGAGE CO.; WELLS FARGO & COMPANY; WELLS FARGO HOME MORTGAGE, INCORPORATED

*Defendants-Appellees*

On Appeal from the United States District Court for the
Southern District of Texas, Houston Division, Multi-District Litigation Case
No. 4:11-MD-2266

## BRIEF OF APPELLANTS

Rhonda H. Wills
WILLS LAW FIRM, PLLC
1776 Yorktown, Suite 570
Houston, Texas 77056
Tel. (713) 528-4455
Fax (713) 528-2047

R. Paul Yetter
Reagan W. Simpson
Christian J. Ward
YETTER COLEMAN LLP
909 Fannin Street, Suite 3600
Houston, Texas 77010
Tel. (713) 632-8000
Fax (713) 632-8002

*Attorneys for Appellants*

## CERTIFICATE OF INTERESTED PARTIES

No.  15-20711

RAYMOND RICHARDSON; JUDITH GOTT; ANGELA KOLMANSBERGER; JAMES CHAPLIN; LUCY GONZALES; DONNA LYNN PONTELLO; BILL EARLY

*Plaintiffs-Appellants*

v.

WELLS FARGO BANK, N.A.; WACHOVIA MORTGAGE CORPORATION; WACHOVIA CORPORATION; WORLD MORTGAGE COMPANY, ALSO KNOWN AS WORLD MORTGAGE CO.; WELLS FARGO & COMPANY; WELLS FARGO HOME MORTGAGE, INCORPORATED

*Defendants-Appellees*

The undersigned counsel of record certifies the following listed persons have an interest in the outcome of this case. These representations are made in order that the judges of this court may evaluate their possible recusal or disqualification:

1.    The named Plaintiffs-Appellants are Raymond Richardson, Judith Gott, Angela Kolmansberger, James Chaplin, Lucy Gonzalez, Donna Lynn Pontello, and Bill Early.

The following individuals are Plaintiffs-Appellants who filed affirmative written consents to become plaintiffs in this collective action brought under the Fair Labor Standards Act, *see* 29 U.S.C. §216(b), and whose claims are at issue in this appeal:

Charlene Abalos
John Abate
Amir Abbasi
Elaine Acevedo-Cazessus
Lori Ackerman

Steven Acuna
Aimee Adams
Darin Adams
Kristine Lisa Adams
Kenneth Winfred Agee Jr.

2

Frank J. Agnelli
Anthony B. Aguilar
Antonio Aguilar
Ruth Adelia Aguilera
Henry Aguirre
Rosa S. Aguirre
Farooq Ahmed
Jason Aiello
Ravil Ralph Akchurin
Brett Alan-Lee
Anan A. Albarrak
Josette Marie Alexander
Trey Alexander
Troy L. Alexander
Ingrid G. Alfaro
Abdul Alizai
Jacqueline E. Allen
Michelle Almenanza
Guadalupe Alvarado
Dannie L. Alvarez
Karina Alvarez
Ruben Amaro
Tina Amaro
Jackie Ambriz
Margaret Amodio Federal
Thomas F. Amoruso
Elaheh Amouzadeh
David W. Anderson
Rodney Anderson
Sean Lawrence Anderson
Gloria M. Andia
Cornelia C. Andrei-Moore
Zeny Joanna Androus
Mark Angotta
Diana Anguiano
Ryan Andrew Anido
Michael S. Ansari
Alfred Alan Antonio
Fernando Aparicio
Mary Sacheen Apprill
Albert J. Aragon

Vincent G. Araiza
Victoria Arau
Brian K. Arbeiter
Fernando Gonzalo Arboleda Jr.
Carol Ardinger
Daniel Arias
Cristina J. Arroyo
Neal A. Aryamane
Daniel A. Asare
Cesar M. Ascarrunz
Daniel Ashbrook
John Ashkar
Elias Asilnejad
Monica S. Aston
Kale Atencio
Clinton Craig Atterbury
Randy Aubuchon
Sally A. Audet
David Joseph Aulicino
Arnold Avalos
Maxine Avalos
Lilian Awadalla
Katherine M. Ayala
Pantea Ayers
Juan Azcarate
Fazilat Azimi
Linda D. Bacchus
Bobak R. Badi
Joshua L. Bahl
Lynne Bahr
Kristina R. Bailey
Parmjit K. Bains
Edith Oberkirch Balderas
Leslie Caron Bandle
Joy A. Bang
Lisa Pirozzi Banhagel
Rosie Barajas
Joann S. Barbadillo
Caroline Gerardo Barbeau
Michael D. Barbera
Ane-Marie Barbettini

Deborah A. Bard
Benjamin M. Barredo
Richard W. Barrera
Patricia Barreras
Sandy S. Barresi
Elizabeth Ann Barrett
Mark S. Barrow
Katrina M. Barry
Douglas Barta
Charito R. Bartlett
Jody David Bartley
Christopher M. Barton
Brian D. Barton
Josh M. Bartucca
Susan Rae Basgall
Raj Batra
Patricia A. Bauer
Jon Lawrence Baughman
James J. Bayan
Jeffrey R. Beadnell
Kyle M. Beagle
Ortencia C. Bean
Bruce R. Beasley
Jeffrey Becker
James A. Bedell
Laurence A. Beers
Marie Elaine Beers
Ling C. Beh
Cynthia Behar
Alexander Eugene Bejenaru
Jeanne Bekas
Todd S. Bell
Elizabeth B. Bell Lynch
David Michael Bellinger
Joseph L. Bellisario
David J. Belluomini
Roberto Alonzo Beltran
Gregory R. Benafield
Leenseal Benavides
Maxine Yung Benner
Michelle Bennett

James V. Bennetts
Rebecca E. Berbena
Eddie M. Berengue
Mark Berengut
Marsha Berg
Richard M. Berger
Larry Berlfein
Merle Berman
Oriolando M. Betencor
Herbsima Betpera
Jagjiwan Bhangu
Lewis S. Bianchi
Ronald A. Bienen
Luz Maria Bierbower
Elizabeth A. Biersch
John E. Biltz, Sr
Thomas Bisceglia
Claudia P. Blackwood
Kelly Blair
Michael Lee Blair
Richard Joe Bloom
Ruweida Bloomquist
Erich W. Blume
Debra J. Boban
Karen A. Boemler
Larry Boesen
Medhat R. Boktor
Steven Bollow
Brian A. Border
Marh Kathryn Bordonaro
Sergio Bortolamedi Jr.
Fred J. Borzoni
Denise Ann Bottimore
Tara S. Botts
Philip C. Boukather
Karol A. Bourdet
Paul C. Bowler
Hiroko Bowlin
Paul A. Bracamonte
Rogelio E. Bracamonte
James L. Bradbury

Melonie L. Bradley
Chanell Marie Brandenburg
Greg Brannis
Ian Gary Brannon
James W. Bray
Cherie L. Brebner
Jodie Yuko Brennan
Tara L. Brennan
Cathy J. Brentlinger
Lynette Brigham
Patricia Briones
John Joseph Brockman
Michael E. Brouse
David A. Brown
Marilyn Louise Brown Ross
Stephanie Jenkins Brownell
William E. Broza
Jenae N. Buchanon
Patrick Bucheli
Melanie Buffington
Rick D. Bui
Albert M. Bunuan
Brian M. Burgan
Eric M. Burgess
Brandt Eric Burghall
Linda L. Burns
Loretta Burns
David M. Bussacco
Jarrett Bussacco
Olga D. Bustos
Carol J. Buzzard
Lennox Byer
Steve A. Byrd
Marco A. Caamal
Margaret A. Caddel
Barbara Lee Cadman
Billie M. Cagle
Anita Calvillo
Geraldine M. Calvo
Caryn E. Camerano Oyerbides
Maria C. Camero

Fahali A. Campbell
Pamela J. Campbell
Ruth Campos
Jhackeline L. Cana
Christopher W. Cannon
Augusto Cano
Eric Cano
Jessica Dai Cao
Robert Capparelli
Carl C. Cardarelli
Phillip A. Carey
Natalie Carignan
Maxwell J. Carlson
Renee Carnival
Ignacio Carrillo
Cynthia Carrington
Brenda H. Carroll
David D. Carroll
Richard Edward Carroll
Laura Davey Carruthers
Victoria Tram Carter
Qualen D. Carter
Claudia Carvallo
Aloysius Casanas
Jennifer Dawn Casanova
Donald Loyd Casey
Charles Scott Cason
Oliver P. Cassidy
Merab R. Castaneda
Yolanda L. Castaneda
Adriana Castillo
Shane M. Castro
William R. Cathcart
Philip A. Caulfield III
Jose M. Cavazos
Norma Postadan Cave
Norma M. Caywood
Miriam J. Cazares
Michael V. Ceglio
Vikas Chaddah
Mary V. Chaffee

Wilson Chai
Karine Chakhbazyan
Kevin E. Chamberlin
Jeremy A. Chambers
Cheryl Lynn Chambers-Rodgers
Betty Chan
Kee Chan
Shannon Y. Chan
Sunita Chand
Karen M. Chandler
Eric R. Chaney
Bob Chang
Christina T. Chang
Pamela Lim Chang
Danny Chang
Steven Chang
Harriet Huiling Chang-Rossi
Chung C. Chao
Jason Chapin
Sandra L. Chaussard
Daniel J. Chen
Lisa Isue Chen
Michael Tachang Chen
Nancy Pei-Shing Chen
Steve Tien-Hao Chen
Jasmine Cheng
Carmen R. Chiorean
Stephen Kai-Moon Chiu
Robert M. Chiuppi
Jun Kyu Choi
Richard C. Chow
Catherine M. Christian
Tracylee Clark
Gregory E. Clegg
Richard C. Clemens
Jennifer L. Clossick
Joseph P. Closson
Shane Patrick Coffey
Jerry T. Cohen
Mark Steven Cohen
Tammy Colangelo

Dana M. Cole
Nancy J. Cole
Linda Louise Collier
Lorene Fay Collier
Faith Irene Come
Robert Concepcion
Martin Conde
John J. Coniglio
Michelle Contreras
Maria H. Contreras-Mata
Jeffrey Cooper
Jeremiah M. Cooper
Joseph R. Corral
Eva E. Corral-Camacho
Rodolfo C. Cortez
Leticia Cortez
Brian David Cosman
Charles Colin Cossio
Rosemary Y. Costine
Alejandro M. Covarrubias Quintero
Melissa Cowperthwaite
David Brian Cox
Kristie Cramer
Nathan Cranford
Patrick Cree
Ronea Crockett-Williams
Michael J. Cruce
Jon Matthews Daco
Imtiaz Dadabhoy
Dean W. Damron
Gary C. Damsen
Robin M. Danby
Devin Potter Daniels Jr.
Vadim Danilin
Stacie Dasinger
Gary S. Davies
Deborah Davis
Patrique Davis
Jeanne Davis
Victor Lee Davis
Kelli M. Davis

Denise Davison
Dwayne Dawson
Joyce De Armero
Lisa Pelayo De La Torre
Antoinette M. De Santis
Kenneth Dean
Justin Dees
John Dekellis
Theresa B. Deleon
Maude A. Delfin
Juan Delgadillo
Daniel Frank Deluca
Julie H. Demarcus
Nidhal Nancy Demaria
Dean L. Demoss
Valerie Derry
Nathan J. Derutte
Sumir Desai
David R. Deteso
Renee Devito
John Richard Dewey
Cynthia M. Dewolf
Amarjit S. Dhanowa
John L. Diamond
Manuel Fernandeo Diaz
Marisol Diaz
Jose A. Diaz
Sandra L. Diaz
Luis Alberto Diaz-Perez
Booker T. Dikes Jr.
Paul J. Dimambro
Michael Thanh Do
Donald E. Dodge
Daniel J. Dominguez
Steven M. Dominguez
Jennifer Donabedian
Monica R. Dorris
Richard Thomas Doughty
Tanis Douglass
Liam C. Doust
Chazal Doustar

Jet Doye
Julie M. Drady
Heidyliza Ducut
Brenda Susan Duenes
Timothy S. Dugan
Michael E. Dullea Jr.
Jonathan Richard Dunckel
Nicole Duran
Dori Ann Dutton
Marty Alan Dwight
John Francis Dwight III
Rebecca Ealy
Joseph Eberstein
Joseph Ebor
Anthony Douglas Ebright
Martha E. Echols
Karen L. Eddy
James Rand Edgerly Jr.
Kara Edwardson
Jeffrey Eisenberg
Sandra Schneider Eisenberg
Suzanne M. Elford
Zain Elias
Cynthia V. Elmendorf
Marc Dennis Ely
Mohammad N. El-Zahhar
Allen Ross Emas
Frederick Leslie Emery
William Emhoff
Araceli Enriquez
Eun Jeong Eom
Nicole Ericksen
Carlos H. Escobar
Lisette Escobar
Patricia Espeut
Carmen Vianey Espinoza
Carryne Latada Espinoza
Desiree Estorga
Frances Vanessa Estrada
Mario Martin Estrada
Tamara Fawzy Estrada

Pablo Mauricio Estrada
Neil M. Estrada
Irving R. Estrada
Derrick N. Evans
Fabian Evans
Nancy C. Everett
Annette Fadness
Samir S. Fahmy
Robin S. Fahning
Robert Fair
Louis Fajardo
Mark C. Falcone
Howard Joseph Farling  Jr.
Gina M. Farrell
Thomas Fashing
Jarrod Fassio
Corey A. Featherstone
Lorraine Feesago
Terry A. Feingold
David Ross Fellner
David Stanley Ferguson
Joseph M. Fernandez
Michael Anthony Ferreira
Pompey H. Festejo
Matthew C. Fettig
Diane G. Field
Carol M. Finley
Daniel Fish
Edward J. Fitz-Gerald
Adam Fitzhugh
Donnie R. Flannery
Alfredo Fletcher
Christy Dawn Fletcher
Debra M. Flockhart
Dalila Oneida Flores
Christina Noelle Flores
Miguel Flores
Marciana R. Floro
Lorin Ellen Flynn
Bryan Fonseca
Victor Fonseca

Paola V. Fonseca
Elizabeth A. Forbes
Thomas R. Forker
Donna Ann Forman
Stanley K. Forrest
Jeffrey S. Foster
Niloofar Fouladvand
Steven Fox
Kelly S. Franco
Eric S. Francoz
Robert G. Franklin
Staci Michelle Fraser
Marcia M. Frater
Laura Esther Fredrickson
Janice Elizabeth Freeman
Karen B. Freese
Tanya Renee Freitas
Ada Frenkel
Lily Maria Frenkel
Robert Fresquez
Ian Scott Frogner
Randall Raymond Froom
Richard Steven Fuentes  Jr.
Rhonda L. Funderburg
Kirk Edward Fyson
Velma A. Gallardo
Adrienne Renee Galvan
Martha L. Galvez
Glenn Gamalinda
Jocelyn Gamalinda
Adriana Garcia
Carol Lynn Belva Garcia
Manuel L. Garcia
Oscar I. Garcia
Judith Garcia
Jim M. Garey
Tracy Garner
Sandra D. Gasaway
Tiffany A. Gaser
Hector Raul Gastelum
Daniel J. Gattuso

Richard Douglas Gause
Sean David Gebauer
Susan Gehring
Maris Gelfman
Joan Marie Gemoll
Daniel Genie
Miriam Georgio
Ahmad R. Ghavi
Damian Giatti
Kay Gibson
William Joseph Gill
Maryam M. Gillany
Giselle L. Gillard
Paul H. Gino
Fiorella G. Giusti-Barrera
Sandra L. Godoy
Everardo Godoy  Jr.
Cecilia R. Goins-Louderback
Katherine E. Golden
Robert J. Golyer
Cabriel R. Gomez
Gricelda Vidal Gomez
Jennifer A. Gomez
Alessandro E. Gomez
Nicolas I. Gonchar
Martin E. Gondo
Colette D. Gonsalves-Palmer
Gerard S. Gonzales
Patricia A. Gonzales
Gloria Gonzales-Jackson
Kellie Gonzalez
Michael Gonzalez
Saundra L. Gonzalez
Veronica Gonzalez
Kayvon Goodarzy
Jeff Goodman
Mike J. Goodman
Sean Patrick Goodwin
Frank Hamilton Gordon
John Robert Goss
Maged Gourgy

Christopher Graham
Khristine Allison Gray
Steven N. Gray
Jonathan Graybill
Abby Rosete Green
Brenda Green
Gloria W. Green
Leah L. Green
Gloria Mirazo Gregor
Casey L. Gregory
Brian M. Griego
William K. Griffis
Jason Grigsby
Steven Scott Grimes
Jeannette Marie Grismer
William Nr Gross
Lee E. Grzeskowiak
David R. Guerrero
Edith Guitron-Lona
Diana Gunderson
Mac Gutierrez
Sottika V. Guttieri
Trang Ha
David Dong Ha Lee
Gregory J. Haag
Hanan O. Haddad
Christian Haig
Tracy Hall
Cathy Halverson
Linnea Petrie Halverson
Inda L. Hamad
Charles Hamilton
Jacqueline Hamilton
Guy D. Hamilton
Cynthia D. Hardy
Cheryl A. Hargett
Michele O. Harley
Mary Manson Harp
Lesa Ann Harris
Mark Anthony Harrison
Susannah Alderson Harte

Kirk Hartley
Rachael Rhyann Hartley
Dean Harvey
Coco A. Hassan
Jeffrey Hauck
Lauree K. Hawes
Scott Thomas Hawkinson
Beverly J. Hawley-Martin
Cort O. Haymond
Susan F. Hedrick
Lester F. Heilmann
Tori L. Heilmann
Benjamin Kirk Heinrichs
Mickey Glenn Hellman
Anthony Joseph Hernandez
Beatriz Hernandez
Gerardo Hernandez
Idania C. Hernandez
Jack Brendy Hernandez
Celia Hernandez
Manuel J. Herrera
Bradley Joseph Hertan
Tana N. Hester
Scott J. Highman
Catalina Zamorano Hildreth
Paul G. Hiller
Kenneth Tyrone Hilton
Adam Hinh
Donald E. Hinton
Janna Rorsin Hirth
Linda Jean Hitchcock
Jamie Ho
Judy Ho
Mark E. Hoagland
Johnny Hoang
Bradley Edward Hodge
Andrew K. Hoeflin
Judy A. Hoffman-Barron
Patricia Rose Holder
Tom Holewinski
Rene Holmes

Kenneth R. Holz
Olivia Hom
Nicole M. Honeycutt
Lorinda Louise Hood
Farzaneh Horiat
Christene Houk
Marta M. Hoyt
Kevin T. Hsu
Hao Liang Frank Hu
Robert Hubbard
Jonathan G. Hudak
Rhonda Hummel
Choe Hung
Nat H. Hunt, Jr.
Troy Huntington
David Vernon Huntley
David A. Husten
Timothy D. Huston
Christopher B. Huynh
Quy Ngoc Huynh
Tina Kim Huynh
Carlos A. Ibarra
Arlene Mayfield Inouye
Trina Louise Intravaia
Maha Ishak
Bernard Israel
Abby Izurieta
Alberto J. Izurieta
Pamela Lee Jackson
Venita Jackson
Donna E. Jackson
Brent Allen Jacobs
Joe C. Jacobs
Michael D. Jacobs
Addison S. Jaggers
Seema Jain
Dorothy P. Jakobsen
Jessica Rae James
Debra R. James
James S. Jang
Jan Janoian

Zina Janoian
Michael Dean Jantz
Celia Jaramillo
Dawn M. Jarman
Shawn Michael Jarvis
Robin Hart Jermaine
Tammy Jimenez
Adam Q. Johnson
Thomas J. Johnson
Brian Q. Johnson
Himanshu Jolly
Gary R. Jones
Kenneth W. Jones
Nina Jones
Carlotta D. Jones-Brown
Gina Marie Jordan
Nicole Danielle Jordan
Laura Elena Juarez
Jeffrey Allen Justice
Steven H. Justice
Cameron Claire Kaelin
Nancy Ann Kaiser
Gurpreet K. Kalirai
Jesmeet Kalra
Sherry C. Kam
Ara Kanbarian
Marie Kane
Jimmy C. Kang
Khari L. Kasche
Veronica L. Kawal
Marsha Kay Kaye
Daniel J. Kearns
Elena C. Keating
Wilhelmina P. Keefer
Jimmie L. Kelley, Jr.
Jan Harris Kelly
Mia Kelsey
Howard Robert Kennedy
Michele Kesner
Terry Ketchel
Hashem B. Khadra

Warda R. Khan
Yusuf S. Khan
Bobby Khorshidi
Brian Kiczula
Jennifer Kim
Nicole S. Kim
Marie Kim
Laurie Sueyeon Kim
Clifford Y. Kim
Michele E. King
Todd Bradley King
Alison King
Bruce D. Kipley
Rome E. Kirk
Linda Kirschner
Daviel L. Klebesadel
Dave Klinsmann
Brandon Klump
Rocio Rickards Knott
Johnny Knox
R Erik Knudsen
Kenneth M. Koch
Peggy Lee Kochevar
Robert Koehorst
Bee Chein Koh
Steven Craig Kokines
Mikki Kong
Colleen Kordich
Richard S. Kosoff
George Ralph Kouri
Hang D. Kousky
Debra Marie Krup
Michael Alain Kuo
Varoujan M. Kurkeyerian
Carrie Kurtz
Karin M. Kwong
Maureen L. La Montagne
Armando C. La Rosa
Mary Jo Lafaye
Manuel Lafosse
Eric Laguardia

Lynne Lake
Julie T. Lam
Benjamin Landaverde
Julian Anthony Landeros
Melanie Denise Landis-Muir
Michael L. Landrum
Karen D. Lane
Theodore A. Lange, Sr.
Jennifer I. Larson
Angelica Lassiter
James Todd Latham
Sonia E. Latifzada
Christopher Michael Latorre
Clemy Law
Arnetta L. Lawler
Lee G. Lawrence
Maria J. Lazcano
Rafael Lazcano
Thomas A. Lazerus
Ken V. Le
Gary Sherman Leach
Donald V. Lee
Dorothea Lee
Phillip R. Lee
Terrence M. Lee
William Lee
Debbie L. Lee
Elizabeth Reyes Lefore
Chastane Legaspi
Thomas E. Leigon
Scot Leisy
Dennis H. Leon
Misty Lynette Leonard
Michael L. Leonard
Mario T. Leos
Rochelle M. Lewis
Christopher A. Lewis
Wendy Y. Li
Tyler W. Liljjekvist
Tom K. Lim
Lihong Helen Lin

Sheue-Meei Lin
Kashala D. Link
Debra A. Linnell
Jae Arre Lloyd
David D. Lodwig
Barbara Jean Lofranco
Lori Ann Logue
Ricardo Sanjuan Lomeli
Robert Lomelin
Karen M. Long
Carlos G. Lopez
Christian M. Lopez
David M. Lopez
Elva Elena Lopez
Marie Kathleen Lopez
Narciso M. Lopez
Roger Steven Lopez
Sonia Lopez
Altagracia Lopez
Joshua O. Lopez Jr.
Shirley J. Lopez Martinez
Karen S. Lopucki
Harold Bryant Lott
Tobie L. Love
Jessica Ivette Lozano
Juan N. Luciano
Ben Demian Ludington
Sandra C. Luevano
Glenn Kurt Luque
Shawna A. Lynch
Joyce J. Lyons
Robert Ma
Thomas R. Macdonald
Carol Maria Macias
Carolina Macias
Barbara Macias-Abu
Kenneth Macleod
Gilbert J. Macquarrie
Rudy R. Madrid
Dominic Magadia
Moises Magana

Jorge Louis Magana
Vinod A. Mahboobani
Eric Mainini
Bryant Pearson Majernik
Torrance Mak
James Makowski
Lamya Malhotra
Jacqueline C. Malic
Kenneth J. Malnati
Michael Mancuso
Cynthia Lynn Mandel
Benjamin A. Mangabat
Marcel Mangaliman
Christine W. Mann
Maria Estela N. Maravilla
Jacqueline Anne Marion
Brandon D. Marks
Ryan Marks
Victoria A. Maroosis
Erica J. Marquez
Katherine H. Martin
Lori J. Martin
Michelle Lia Martin
Richard J. Martin
Vincenzo Martinelli
Edelmiro Recio Martinez
Laura B. Martinez
Michael Douglas Martinez
Migdalia Martinez
Laura L. Martinez
Patricia A. Martinez-Skinner
Nancy S. Marx
Angelica Mata
Darlene V. Matthews
Richard M. May Jr.
Linda Kay Mayer
Nehemias Mayora
Michael Mazure
Richard F. Mazziotti
Brenda McAdams
Patrick D. McCabe

Brent M. McCarthy
Michael L. McChristian
Kim Renee McClure
Timothy William McCollister
Robert M. McConnell
Eileen Louise McCracken
Shirley J. McCune
Kimberly Mae McFee
Daniel Clyde McKinley
William K. McLemore
Michael David McMahon
James R. McMillan
Peter V. McNally
Michael D. McNeely
Jennifer McQueary
John Theodore Medin III
Stephen E. Meier
Armando Mejia
Linda N. Mejia
Susan Mek
Guadalupe Melendrez
Lizet Membreno
Ben H. Mendoza
Holly Haddorff Meredith
Ginny C. Merritt
Adam D. Mesnick
Aimee K. Metschuleit
Sheri D. Meyer
Marvin Meza
Brian S. Midland
Anna Laura Mihalov
Dalila Noui Miller
Laura R. Miller
Jacqueline Mills
Heather Millspaugh
Christopher R. Milton
Gabriela Minjares
Brian David Minkow
Boris L. Mirsakov
Michael P. Mizrahi
Khandan Mobasser

Armineh Vano Modoyan
Ardavan Mofid
Musa M. Mojaddedi
Chanda R. Molinari
M Scott Mondfrans
Leslie D. Monge-Harvey
Estella Monico
Eric Montaghami
Erika Montenegro
Gregory W. Moore
Jo Anna Mackie Moore
Cindy Mora
Julio F. Mora
Araceli Morales
Edward Morales
Ruth Nohemi Moran
Denise Moran
Teresa T. Morel
Stacie M. Moreno
Ivan Moreno
Mariela A. Moreno-Murray
Tamara K. Morgan
Margarita E. Morrill
La Tanya Morris
James D. Morris
Peter J. Morrissey
Daniel Moss
Phillippe Mouradian
Valerie A. Moussa
Cindy E. Moy
Amina K. Munif
Xavier Muniz
Gerard Frank Munson
Lidia Murillo
Jeremy Ryan Musson
Bryan P. Myers
Warren E. Myers
Evelyn D. Nabwe
Ravi Nadesan
Afsana Naimyar
Arlene Nalbandian

Misak Michael Nalbandian
Manuel Narag III
Rajesh Narang
Silvia Natividad
Octavia Navarro
Omar Navarro
Edwin F. Navas
Arnie Nebriaga
Terri Needham
Riyad Nehlawi
Jeffrey Neistein
Leif Seitz Nelson
David W. Netzley
Salvatore A. Nevigato
Lisa A. Nevins
Steven Newman
Eleanor Ng
Jimmy E. Ngo
Anh Phi Nguyen
Elle Nguyen
Elli Thi Kim Nguyen
Kristi Nguyen
Nathan Nguyen
Thuynga Nguyen
Vuong Van Nguyen
Cuong D. Nguyen
Joseph T. Nguyen
Thao T. Nguyen
Shirley Nichols
Daniel Nicolau
Richard G. Nielsen
Kathleen June Niemczuk
Shahrokh / Shawn Nikmehr
Jorge Nila
Robbin Nili
Sarmad Nisar
Shari Noble
Ronald Nodder
Janel Marie Noe
Lara Nofsinger
Mark A. Nokes

Scott Laurence Nolan
Howard M. Nordberg
Martha E. Noronha
Anthony Eugene Nunez
Tiffany K. Nunez
Chereyl Ann Nunn
Wahidullah Nurie
Anayo Nworjih
Chris John O'Brien
Laurie Lynn O'Callaghan
Guadalupe Ochoa
Vincent S. Oddo
Sandra Odom
Thomas Donald O'Donoghue
Michael C. O'Hare
Timothy J. O'Hare
Paul Olbrantz
Christal M. Olbrich
Dennis S. Oleesky
Cristina Olivares
Ernesto Olivares
Daniel Ray Olsen
Eva O'Mara -Cross
Philip Onnigan
Jessica Orca
Lanre Orilonise
Luis A. Oropeza
Arturo R. Ortega
Yolanda Ortega
Tanya M. Osipov
Ilir Osmeni
Darryl C. Ou
Ramsin Ovrahim
Matthew G. Owen
Daniel M. Ozorio
Ricardo Pacheco
Armando Pacheco Jr.
Steve Pagan
Athanasios C. Pagoulatos
James S. Paik
Leena A. Pal

Dawn D. Palestini
Sean A. Palmer
Mindi Marie Paris
Bobby J. Park
Robin Louise Parke
Scott James Parker
Blaine Michael Parker
Carlos Parra
Beth A. Parrish
Jessica A. Parsley
Sharmista Patel
Karla Patino
Daniel Bruce Patterson
Jerry Andrew Patterson
Marcia Patterson
Alicia S. Patterson-Johnson
James Richard Patton
Gary Scott Paul
Danton Paul
Richard C. Paulson
Timothy L. Pearce
Guadalupe Aida Pena
Marianne R. Pennington
Cheryl L. Pepper
Loren C. Perez
Juan G. Perez
Felix Perez, Jr.
Daniel Perry
Darren Lane Peterie
John Kenneth Peterson
Michael R. Peterson
Steven L. Peterson
Cynthia Y. Pham
Kevin Phan
Sergio Piana
Sylvia Piceno
Kristy Calle Pidwell
Karen C. Pike
Carmen E. Pineda
Mauricio Pino
Luis E. Pinot Jr.

Andrew George Pistone
Pilar Iliana Pittman
Stephen Plakcy
Maria G. Plascencia
Patricia R. Plascencia
Joseph V. Plaza
Kimberly Plowman
Adrienne Podell
Michael J. Poladian
Steven R. Polnicky
Miranda Lynn Pompei
Sandra Y. Ponce Taylor
Daniel Posehn
Julie Posey
Marvin Lee Poyser
Mario Prado
Gregory G. Preite
Ernest Prendez
Heather Lee Presha
Hendrik Pretorius
Lesley Helene Pretorius
Geoffrey L. Prettyman
Antoinette S. Price
Steve Pro
Kevin Prochnow
Anita K. Pryor
William Pulido
Victor H. Quijano
John D. Ra
Roberto Mith Rabano
James P. Racine
Linda P. Rae
Adriana Ramirez
Amparo J. Ramirez
Pablo Ramirez
Paul M. Ramirez
Salvador Ramirez
Thomas Ramirez
Armando Ramos
Liliana Ramos
Luanne Randolph

Armaghan Rangchi
Barbara Rapp
Alethea C. Raush
Amber R. Raygor
Earl Reason
Yolanda Reason
Ame Nicole Reed
Vicky B. Reese
Cynthia Reeves
Michael Regan
Loni R. Reginato
Quintin Jim Reich
Neil T. Reid
Elizabeth Remington-Wishba
Edna Rendon
Michael Stephen Reno
Selene Reveles
William Aaron Rhoads
Patricia A. Rhodes
Joel Allen Richardson
Tana M. Riddle
Stephen M. Rinehart
Gilbert Rivera
Myrna Y. Rivera
Edgard A. Rivera
Charles Roberts
Daniel Kevin Roberts
Linda Susan Roberts
Peter R. Robinson
Alma D. Robles
Susan Rocha
Joshua Blair Rodgers
Carlos Manuel Rodrigues
Alma Rosa Rodriguez
Boris S. Rodriguez
Jose Elias Rodriguez
Maria A. Rodriguez
Mario Rafael Rodriguez
Martha Rodriguez
Rebecca Ann Rodriguez
Roxana Rodriguez

Victor M. Rodriguez
Linda L. Rodriguez-White
Lisa Rogers
Maurice A. Rogers
Adrienne N. Roman
Vanessa Davila Romero
Christian David Romero
Sigal Ronen
Renee Ross
Torrin M. Rossi
Annyett Royal
Alphonso Rudolph
Rodolfo Ruiz
Julie Anne Rumsey
Rebecca L. Rupe
Char Ruppel
Paul Thomas Russell
Stanley Warren Russell
Regina Rutnam
Jefrey Michael Ryan
Alfredo Saavedra-Gomez
Mojgan Saba
Scott Matthew Sabo
Syrous J. Saboori
Peter Sabounjian
Samia S. Sadedeen
John E. Sagredo
Ivette Saiz
Daniel Armando Sala
Christopher Salayko
Joel Saldana
Manuel Salinas
Diane E. Salinas
Pablo A Salinas
Teresa D. Salmon
Giselle San Filippo
Armando Sanchez
Claudia M. Sanchez
Joseph M. Sanchez
Lissette Sanchez
Cynthia Sanchez-Singh

Howard S. Sanders
John E. Sanders III
Michelle Sanderson
Claudia Sandoval
Marysela Sandoval
Carlos Juan Santiago
Ramon Cedric Santiago
Diane Santos
Emanuel A. Santos
Roger Sardina
Scott Joseph Sarno
Karisa Marie Sarracino
Axia I. Saul
David Savin
Matthew Saherio Scalise
Adam Michael Schaefer
Martin Charles Schaeffer
Ian Patmatthias Schaser
Steven F. Scheiern
Sabrina M. Schmitt
Brent W. Schneider
Trina R. Schneider
Daniel G. Schroeder
Scott Alan Schroeder
Maureen Schwartz
Tawnya C. Schwartz
Jeffrey Benjamin Scott
Juanita Nidy Scott Fryer
William Michael Seagrave
Thomas R. Sebring
Janice Sedloff
Michael Sedloff
Marcela Semancik
Daniel C. Senico
Ronald Erwin Sequeira
Luis Serpas
John P. Serrano
Edgar Sevilla
Stephen Sgambati
Roya Shabtaie
Sandra Shafer

Ryan R. Shaffer
Ruth Shandor
Kathleen Shannon
Latishia F. Sharer
Douglas M. Sharp
Megan K. Shay
Dora Jean Shears
Andrew T. Sheftel
Sanjeev Singh Shera
Eugenia N. Sherwood
Vikram S. Shetty
Felix Carlos Shiels  Jr.
Margo E. Shinn
Lisa M. Short-Tuccori
Tracy Shumway
Nathan Sibbet
Goldy Sidhu
Carol Lynn Silva
Nancy Lorraine Silva
Kimberly D. Silverman
John S. Simmons
Montgomery A. Simons
Pamela Christine Simpson
Lavega Sims
Robyn L. Sims
Jasvinder Singh
Christopher Sinhbandith
Ryan Gregorio Sison
Louann Siurop
Brian Robert Skarg
Brian James Skinner
Luke W. Slivkoff
Ronald Slutsky
Kevin Michael Smart
Joseph Smick
Jeffrey O. Smith
Michael Peter Smith
Patrick Casey Smith
Thomas Guy Smith
Devoreaha A. Smith
Jaspal Singh Sohal

Lucia M. Solis
Perla Soriano
James Soto
Laura Soto
Zied Souissi
Debbie L. Soulliere
Sean Robert Souza
Betsy C. Spear
Michael A. Spivey
Julee Spohn
Daniel Robert Spotts
Jason Drew Stafford
Vicki A. Stahl
Carrie J. Staker
Rhonda Kathleen Stalions
Cheryl Arthudar Stamps
Laureen M. Stancliff
Rumon C. Staples
Patti J. Stark
Charles W. Stechman
Brian J. Stefani
Melody Ann Stein
James Robert Steis
Nancy Arlene Stelling
Winston M. Stephens
Amber Stergious
Daniel Arthur Stevens
Kathleen Marie Stevens
Michelle Annette Stevenson
James R. Stewart
Lindsey N. Stone
Aaron J. Stroud
Kayla K. Strunk
Courtney Stucki
Pedro P. Suarez, Jr.
Claudia A. Suarez-Narvaez
Carlton C. Sue
Tawny Jo Suffecool
Amad Sultan
Dale Allen Sundell
Lorie Ann Sunga

Michael Carl Sunnaa
Cheryl Lynn Sutcliffe
Gregory Robert Sutter
Justin B. Sutton
Karen Lynn Swanson
Matthew E. Switzer
Alice Ee Sze Lai
Fara Tabrizi
Sonia Tahbazof
Sayed Bron Taj
Sonia Campos Taj-Eldin
Richard Tak
Marlene Talamera
Sandra Louise Talbert
Robert W. Talpas
Michelle Lee Tannlund
Robert Tapia
Stephen P. Tattersall
Felicidad Fernandez Taylor
Priscilla Sue Taylor
Wendy Taylor
Sandra L. Temple
Charles Eugene Terry II
Silvie Thang
Michael Thaxton
Amy M. Therriault
Michael W. Thomas
Vincent M. Thomas
Cynthia Carol Thompson
Lisa Anne Thompson
Asela M. Thompson
Min Y. Thompson
Jolie A. Thurston
Brenda Tirona
Justin Edward Tiso
Vivian R. Tomassetti
Hollie Ton
Matthew Tong
Leah A. Torzeski
Jeffrey M. Touchstone
Jean Toussaint

Paulina M. Tovar
Jorge Tovar
Ramses J. Tovar
Julie Tran
Lannie Tran
Danh Tran
Hannah H. Tran
Loretta Windham Treder
Michelle Trevino
Robert Trieu
Robert Conrad Trommler
Robert Trujillo
Natalie Tsai
Elizabeth Po Chu Tsui
Sandra Jean Tuccio-Downing
Elaine Tudela
Robin Tulleners
Carl Tully
Deatra Ann Turner
Irene Marie Turner
Michael Keith Turner
Ralph C. Turner
Ana L. Turpin
Rita Turpin
John Twyman
Tatum S. Ulloa
Tony Valdez
Roberto M. Valencia
Pamela Valendiano
Raymond S. Valie
Krista Pratt Valpreda
John James Valpreda  Jr.
David Benjamin Van Der Zee
Kelly Ann Van Fossen
Norma E. Van Horn
Cynthia L. Van Inwagen
Than Van White
Meta R. Vanderwerff
Devon Michael Vasquez
Jose Vasquez
Arezoo Vatankhahan

Suzanne C. Vejar

Elmer Velasco

Gerardo Velasquez

Chris Veloz

Thomas Craig Velte

Sontino S. Ventimiglio

Rodrigo S. Vianna

Carlos J. Vides

Kirsten L. Vidosh

Richard Vieira

Michael Viktiuk

Rafael Enrique Villalobos

John Villanueva

Ana G. Villarreal

Sindee Lynette Villasana

John Vinaccia

Jaime R. Virchis

Adelina G. Visconti

Joseph Viullo

Elizabeth Volanos

Sheila S. Volarvich

Maria Volkova

Janet C. Voong

Duyen K. Vu

Lan Vu

Richard S. Vujovich

Marty Angela Wade

Abdul Wafadar

Fazal Ullah Wafadar

Antoinette M. Wagner

Patricia Walker

Salina B. Walker

Matthew R. Walker

Derek Tichen Wang

Gayle Li-Ling Wang

April L. Ward

Thomas K. Warfield

Jacob Warren

Reginald K. Washington

Paul L. Wasserman

Tina Wassilian

Timothy R. Waters

Brian Watkins

Tonjia L. Watkins

Brandon J. Webb

Arthur W. Webb III

Shanie L. Webb-Pierce

Inessa Weintraub

Michael Weir

Aaron J. Weisinger

Adrienne Weiss

Shelley Patricia Wells

Quintin West

Young Whang

Richard Mead Whippo, Jr.

Karen L. White

Jeremy White

Michael Ryan Whitman

William Edward Wiebers

Charene A. Wigton

Celia M. Wilbur

Connie Pereina Wilkinson

Charlene Williams

Judy Lynn Williams

Lisa B. Williams

Marc Alan Williams

Stuart Williams

James Edward Williams III

Joel Willis

Rene A. Willis

Stephen E. Willis

Aimie Wilson

Gary D. Wilson

Jerry Wilson

Hilcia L. Winemberg

Joann Maria Wiseman

Angela Woelm

Lestser Wong

Ivy Ka-Ling Wong

John Stephen Woods

Sparkle Nicole Woodson

Natalie Worsham

Tredina E. Wright
Steffan K. Wright
Gregory J. Wright
Sung Hung Wu
Ana M. Xicol
Amy K. Yan
Elizabeth Yanez
Chun Chih Yang
Jennifer Yang
Seung Sub Yang
Rodolfo R. Yela Sr
John Yeu
Louisa Yeung
Joe Hyun Yim
Alex J. Yong
Gloria Young

Heather Young
Susan Young
Joanna Yu
Carol Martin Zacche
William R. Zack
Malahat Zakir
Suzan Zamanianpour
Eduardo Zamarron
Judy Zambrano
Barry E. Zanck
Nicole L. Zardo
Patrick D. Zellar
Dena B. Zeman
Stephen J. Zozaya
Brian N. Zrehigian
Manuel A. Zurita

All Plaintiffs-Appellants are represented in the Fifth Circuit by:

R. Paul Yetter                          Rhonda H. Wills
Reagan W. Simpson                       WILLS LAW FIRM, PLLC
Christian J. Ward                       1776 Yorktown, Suite 570
YETTER COLEMAN LLP                      Houston, Texas 77056
909 Fannin Street, Suite 3600           Tel. (713) 528-4455
Houston, Texas 77010                    Fax (713) 528-2047
Tel. (713) 632-8000
Fax (713) 632-8002

Additional counsel that represented Plaintiffs-Appellants in the district-court

proceedings are:

Diana E. Marshall                       John M. Padilla
Ronald C. Lewis                         PADILLA & RODRIGUEZ, L.L.P.
MARSHALL & LEWIS LLP                    1776 Yorktown Street, Suite 110
1010 Lamar Street, Suite 450            Houston, Texas 77056
Houston, Texas 77002                    Tel. (713) 574-4600
Tel. (713) 655-0300                     Fax (713) 574-4601
Fax (713) 655-0130

2.      Defendants-Appellees Wells Fargo Bank, N.A.; Wachovia Mortgage

Corporation; World Mortgage Company also known as World Mortgage Co.;

Wells Fargo & Company; and Wells Fargo Home Mortgage, Inc., are represented

by:

David B. Jordan                         David Scott Warner
April Nicole Love                       LITTLER MENDELSON, P.C.
LITTLER MENDELSON, P.C.                 900 Third Avenue
1301 McKinney Street                    7th Floor
Suite 1900                              New York, NY 1022
Houston, Texas 77010                    Tel. (212) 583-9600
Tel. (713) 652-4784                     Fax (212) 832-2719
Fax (713) 951-9212

Lindbergh Porter
Mary D. Walsh
Phillip L. Ross
LITTLER MENDELSON, P.C.
650 California Street, 20th Floor
San Francisco, California 94108
Tel. (713) 415-433-1940

Darren Mason Mungerson
LITTLER MENDELSON, P.C.
321 North Clark Street
Suite 1000
Chicago, Illinois 60654
Tel. (312) 372-5520
Fax (713) 896-5929

Keith J. Rosenblatt
Michael T. Grosso
LITTLER MENDELSON, P.C.
One Newark Center, 8th Floor
Newark, New Jersey 07102
Tel. (973) 848-4700

Breanne M. Sheetz
Daniel L. Thieme
LITTLER MENDELSON, P.C.
One Union Square
600 University St., Suite 3200
Seattle, WA 98101
Tel. (206) 623-3300

/s/R. Paul Yetter
R. Paul Yetter
*Attorney of Record for Plaintiffs-Appellants*

**STATEMENT REGARDING ORAL ARGUMENT**

Plaintiffs-appellants believe that oral argument will assist the Court's determination of this appeal, which presents legal issues of first impression arising in the context of a factually and procedurally complex case.

TABLE OF CONTENTS

PAGE

Certificate of Interested Parties ................................................................2

Statement Regarding Oral Argument ......................................................24

Table of Authorities ................................................................................27

Statement of Jurisdiction ........................................................................31

Statement of Issues for Review ...............................................................32

Introduction .............................................................................................33

Statement of the Case ..............................................................................35

I.    Wells Fargo Secretly Withholds Information About California HMCs. ......36

II.    *Lofton* ................................................................................................39

     A.    Origins of the *Lofton* action and settlement ...................................... 39

     B.    *Lofton* class notice and release .......................................................... 40

     C.    Irregularities, misconduct, and conflicts affecting the *Lofton* settlement............................................................................................ 41

          1.    Post-judgment procedural history of *Lofton* ............................ 41

          2.    Misconduct and irregularities in the *Lofton* settlement come to light during the course of proceedings on remand.................................................................................... 46

III.    California HMCs Apprise The District Court Of Problems With *Lofton*. ...............................................................................................58

Summary of the Argument........................................................................58

Standard of Review ..................................................................................60

Argument ..................................................................................................60

I.    Because The FLSA Requires That Plaintiffs Opt Into A Collective Action, The Opt-Out *Lofton* Class Action Settlement Had No *Res*

*Judicata* Effect On The California HMCs' FLSA Claims In This
Case.................................................................................................60

    A.    Section 216(b) Mandates An Opt-In Procedure For FLSA
Claims, Meaning An Opt-Out Judgment Cannot Bind FLSA
Plaintiffs. ........................................................................... 61

    B.    Because *Lofton* Class Members Never Became Parties To Any
Earlier Opt-In FLSA Collective Action, *Res Judicata* Does Not
Bar Their FLSA Claims In This Case. ................................ 67

    C.    The Full Faith And Credit Act Does Not Permit, Let Alone
Require, An End-Run Around §216(b)'s Opt-In Requirement. ........ 72

II.    Even If An Opt-Out Class Action Proceeding Can Ever Preclude Opt-
In FLSA Claims, The *Lofton* Settlement Could Not Do So..........................74

    A.    *Lofton* Class Members Did Not Knowingly Release Their
FLSA Claims..................................................................... 76

    B.    There Is No Showing That Any Court Has Scrutinized The
*Lofton* Settlement For Fairness As To FLSA Claims. ........................ 78

    C.    The Misconduct That Tainted The *Lofton* Proceeding Means
*Lofton* Cannot Preclude The FLSA Claims. ...................................... 79

    D.    Applying *Lofton* To Preclude The FLSA Claims Violates Due
Process............................................................................. 81

    E.    Because Of The Pending Appeals, *Lofton* Does Not Have The
Requisite Finality For Preclusion...................................................... 85

    F.    Summary Judgment Was Improper.................................................. 87

III.    At The Very Least, The Claims Of The 233 California HMCs Who
Did Not Submit Claims Forms In *Lofton* And Received No
Compensation Could Not Be Precluded.......................................................87

Conclusion ....................................................................................88

Certificate of Compliance .........................................................89

Certificate of Service ................................................................90

**TABLE OF AUTHORITIES**

PAGE(S)

## Cases

*Akins v. Worley Catastrophe Response, LLC*,
  921 F.Supp.2d 593 (E.D. La. 2013) ................................................................63

*Allen v. McWane, Inc.*,
  593 F.3d 449 (5th Cir. 2010) ...................................................................64, 70

*Am. Tobacco Co. v. Patterson*,
  456 U.S. 63 (1982) ..................................................................................62

*Amchem Products, Inc. v. Windsor*,
  521 U.S. 591 (1997) ................................................................................71

*Barbosa v. Cargill Meat Solutions Corp.*,
  297 F.R.D. 431 (E.D. Cal. 2013) ..................................................................64

*Bodle v. TXL Mortg. Corp.*,
  788 F.3d 159 (5th Cir. 2015) ...........................................................*passim*

*Caminetti v. Guar. Union Life Ins. Co.*,
  22 Cal. 2d 759 (1943) .............................................................................86

*Cheeks v. Freeport Pancake House, Inc.*,
  796 F.3d 199 (2d Cir. 2015) ......................................................................78

*Clemmer v. Hartford Ins. Co.*,
  22 Cal.3d 865 (Cal. 1978) ....................................................................68, 74

*Consumer Advocacy Group, Inc. v. ExxonMobil Corp.*,
  168 Cal. App. 4th 675 (Cal. Ct. App. 2008) ..............................................68, 74

*Donatti v. Charter Commc'ns, L.L.C.*,
  11-4166-CV-C-MJW, 2012 WL 5207585 (W.D. Mo. Oct. 22,
  2012) ..................................................................................................67

*Espenscheid v. DirectSat USA, LLC*,
  688 F.3d 872 (7th Cir. 2012) ...............................................................67, 68

*Gonzales v. Cassidy*,
   474 F.2d 67 (5th Cir. 1973) ........................................................*passim*

*Hagen v. Aetna Ins. Co.*,
   808 F.3d 1022 (5th Cir. 2015) ...........................................................60

*Hansberry v. Lee,*,
   311 U.S. 32 (1940)...........................................................................81

*Hoffmann-LaRoche, Inc. v. Sperling*,
   493 U.S. 165 (1989)..........................................................................70

*Hunter v. Transamerica Life Ins. Co.*,
   498 Fed. Appx. 430 (5th Cir. 2012)..............................................84, 84

*Kakani v. Oracle Corp.*,
   2007 WL 1793774 (N.D. Cal. 2007) .................................................64

*Keeler v. AIG Domestic Claims, Inc.*,
   B226691, 2011 WL 6318485 (Cal. Ct. App. Dec. 19, 2011) .............74

*Kremer v. Chem. Constr. Corp.*,
   456 U.S. 461 (1982)..........................................................................72

*Kuncl v. IBM Corp.*,
   660 F. Supp. 2d 1246 (N.D. Okla. 2009)..........................................80

*La Parne v. Monex Deposit Co.*,
   2010 WL 4916606 (C.D. Cal. 2010) .................................................64

*LaChapelle v. Owens–Illinois, Inc.*,
   513 F.2d 286 (5th Cir. 1975) ....................................................*passim*

*Lipnicki v. Meritage Homes Corp.*,
   Civil Action No. 3:10-CV-605, 2014 WL 923524 (S.D. Tex. Feb.
   13, 2014) .................................................................................*passim*

*Lofton v. Wells Fargo Home Mortg.*,
   No. CGC-11-509502, 2015 WL 4590871 (Cal. Super. July 16,
   2015) ............................................................................................44, 45

*Lofton v. Wells Fargo Home Mortg.*,
   230 Cal. App. 4th 1050 (Cal. Ct. App. 2014)...............................43, 52

*Lounibos v. Keypoint Gov't Solutions Inc.*,
    2013 WL 3752965 (N.D. Cal. 2013) ................................................................64

*Lynn's Food Stores, Inc. v. United States Dep't of Labor*,
    679 F.2d 1350 (11th Cir. 1982) ..............................................................70, 79

*Martin v. Spring Break '83 Prods. L.L.C.*,
    688 F.3d 247 (5th Cir. 2012) ............................................................69, 75, 78

*Martinez v. Bohls Bearing Equip. Co.*,
    361 F.Supp.2d 608 (W.D. Tex. 2005) ............................................................69

*Matsushita Elec. Indus. Co., Ltd. v. Epstein*,
    516 U.S. 367 (1996)...........................................................................*passim*

*McClean v. Health Sys., Inc.*,
    2013 WL 594204 (W.D. Mo. 2013) ..........................................................64, 66

*Millan v. Cascade Water Servs., Inc.*,
    310 F.R.D. 593 (E.D. Cal. 2015) ....................................................................79

*Mycogen Corp. v. Monsanto Co.*,
    28 Cal. 4th 888, 51 P.3d 297 (2002)..........................................................68, 74

*Phillips Petroleum Co. v. Shutts*,
    472 U.S. 797 (1985).................................................................................82, 84

*Pliego v. Los Arcos Mexican Rests., Inc.*,
    No. 14-CV-01686-RM-KMT, 2016 WL 471278 (D. Colo. Feb. 8,
    2016) ............................................................................................................77

*Richards v. Jefferson Cty., Ala.*,
    517 U.S. 793 (1996).................................................................................82, 84

*Roussell v. Brinker Int'l, Inc.*,
    441 Fed. Appx. 222 (5th Cir. 2011)................................................................62

*Ruddell v. Manfre*,
    No. 3:14-CV-873-J-34MCR, 2015 WL 7252947 (M.D. Fla. Nov.
    17, 2015) .....................................................................................................79

*Sandoz v. Cingular Wireless LLC*,
    553 F.3d 913 (5th Cir. 2008) ............................................................62, 68, 73

*Stokes v. Interline Brands, Inc.*,
  No. 12-CV-05527-JD, 2014 WL 5826335 (N.D. Cal. Nov. 10,
  2014) ....................................................................................................65, 77

*Sullivan v. Oracle Corp.*,
  254 P.3d 237 (Cal. 2011) ...................................................................78

*Taylor v. Sturgell*,
  553 U.S. 880 (2008).......................................................................60, 87

*Tennessee Coal, Iron & R. Co. v. Muscoda Local No. 123*,
  321 U.S. 590 (1944)..............................................................63, 64, 70

*Test Masters Educ. Servs., Inc. v. Singh*,
  428 F.3d 559 (5th Cir. 2005) .............................................................67

*Tijero v. Aaron Bros., Inc.*,
  2013 WL 60464 (N.D. Cal. 2013) ...................................64, 66, 77, 78

*Westerlund v. Fireman's Fund Ins. Co.*,
  21 Fed. R. Serv. 2d 12 (N.D. Cal. 1975) ...........................................62

**Statutes**

28 U.S.C. §1291 ......................................................................................31

29 U.S.C. §216(b) ............................................................................*passim*

Cal. Bus. & Prof. Code §§17200 *et. seq.* ...............................................78

**Other Authorities**

Cal. R. Ct. 8.1115(a) ...............................................................................74

Cal. R. Ct. 8.1115(b)(1) ..........................................................................74

Fed. R. Civ. P. 23 ............................................................................*passim*

## STATEMENT OF JURISDICTION

The district court had original jurisdiction under 28 U.S.C. §1331 because the complaint alleged questions of federal law under the Fair Labor Standards Act. 29 U.S.C. §216(b). Plaintiffs timely appeal from final judgment entered on November 4, 2015. ROA.14439, 14442-63. Accordingly, this Court has appellate jurisdiction under 28 U.S.C. §1291.

### STATEMENT OF ISSUES FOR REVIEW

1.    Whether a settlement and release procured through an opt-out, Rule-23-type class action procedure can preclude litigation of Fair Labor Standards Act (FLSA) claims that Congress requires to be adjudicated through an opt-in procedure.

2.    If an opt-out class settlement and release can ever preclude litigation of FLSA claims, whether the settlement and release at issue in this case did so when the settlement class members were not clearly notified that their FLSA claims were at stake and when the state-court settlement process was tainted by irregularities and conflicts of interest.

3.    Whether, in any event, there were genuine issues of material fact regarding the preclusive effect of the prior state-court class action that made summary judgment improper.

## INTRODUCTION

This is a nationwide Fair Labor Standards Act (FLSA) collective action involving claims by current and former home mortgage consultants (HMCs) for unpaid overtime compensation. The defendants are Wells Fargo Bank, N.A. and Wachovia Mortgage Corporation. (In this brief, "Wells Fargo" may refer to defendants collectively or specifically to Wells Fargo Bank, N.A. and Wells Fargo Home Mortgage, a division of Wells Fargo Bank, N.A., as context dictates.[1]) The gravamen of the claims in this action is that Wells Fargo misclassified HMCs as "exempt" from the FLSA's overtime pay requirements and thus illegally failed to pay them overtime wages over a period of several years.

Wells Fargo settled the FLSA claims of the opt-in plaintiffs from every state except California. As to the California plaintiffs, Wells Fargo asserted a preclusion defense based on a prior settlement in a state-court class action that was adjudicated on an opt-out basis under California's equivalent to Federal Rule of Civil Procedure 23.

Despite a record showing that the California settlement was tainted by egregious misconduct, including complicity by Wells Fargo itself, and despite the fact that California appeals that could have a material effect on that settlement are

---

[1] Wachovia was acquired by Wells Fargo Bank, N.A., and both defendants have been represented by the same counsel. The HMCs whose claims are at issue in this appeal were employed in California by Wells Fargo Home Mortgage, which was the defendant in the California state court class action that is relevant to this appeal.

still pending, the district court here granted summary judgment that the California plaintiffs' FLSA claims in this federal action are precluded. This appeal is from that summary judgment order.

As a matter of law, FLSA claims cannot be settled or released through an opt-out class action proceeding because Congress has mandated that such claims be litigated on an opt-in basis. The principle that an opt-out class action settlement cannot extinguish opt-in FLSA claims is a matter of first impression for this Court, but it flows directly from the statutory text and accords with this Court's prior interpretation of that text. Under the special procedures mandated by the FLSA, only those employees who affirmatively submit written consent to a court become parties to the FLSA litigation. Allowing Rule-23-style opt-out class actions to extinguish FLSA claims would eradicate that difference between an FLSA collective action and an opt-out class action, to the detriment of both employees and employers.

Moreover, and in any event, the minority of courts that have held that an opt-out class action settlement may ever preclude FLSA claims recognize that there must at least be assurances that the class action proceeding was adequate, providing absent class members with fair notice, reasonable compensation for their non-waivable FLSA claims, and due process. The state-court settlement at issue here was far removed from meeting that standard.

Class members were not notified that their FLSA claims were at stake. Class members did not receive adequate representation and vigorous pursuit of their rights. And the whole proceeding was tainted by extraordinary misconduct, including in particular a secret $6 million side deal between Wells Fargo and a group of plaintiffs' lawyers, which was concealed from the California trial court and resulted in those lawyers misappropriating $5.5 million of that money as unapproved fees and the vast majority of class members receiving nothing. The California trial court has now made specific findings about that wrongdoing—and Wells Fargo's complicity in it. And California state appeals from the California trial court's order are still pending.

Simply put, if any opt-out class action settlement could ever preclude FLSA claims, the one at issue here could not. The Court should reverse the district court's grant of summary judgment and remand for further proceedings.

## STATEMENT OF THE CASE

This action consists of five cases transferred to the district court for pre-trial proceedings by the United States Judicial Panel on Multidistrict Litigation (MDL). ROA.41-46. In 2014, a settlement was reached as to the claims of all of the opt-in collective action plaintiffs except for those who had been employed by Wells Fargo in the State of California (the California HMCs). ROA.11617-54. The claims of the California HMCs are the claims at issue in this appeal.

In the district court, Wells Fargo successfully asserted that the California HMCs' claims were precluded by a settlement reached in a California state court opt-out class action proceeding, *Lofton v. Wells Fargo Home Mortgage, a division of Wells Fargo Bank National Association*, No. CGC-11-509502, in the Superior Court of the State of California, County of San Francisco, in which the class representative had stated claims under California state employment law. ROA.12879-901, 14449-62.  In the district court, the California HMCs contended that the *Lofton* settlement could not preclude their FLSA claims in this case because (1) as a matter of law, an opt-out, Rule-23-type class action procedure cannot resolve FLSA claims, which must be tried on an opt-in basis; and (2) in any event, the *Lofton* class members were not notified that their FLSA rights were at stake, and the *Lofton* settlement process was tainted with irregularities and conflicts.     ROA.13056-83,    13439-43,    13783-85,    13799-808,    14191-92. Additionally, the California HMCs asserted that because of still pending appeals in California, the *Lofton* judgment does not have the requisite finality to be given preclusive effect.  ROA.13807-08.

I.     **Wells Fargo Secretly Withholds Information About California HMCs.**

Although the settlement in *Lofton* was reached in March 2011, *see* ROA.13013-19, plaintiffs' counsel in this case were not apprised that *Lofton* even existed until mid-2013.  Counsel for the California HMCs learned of *Lofton*'s

existence only after uncovering a deception by Wells Fargo with respect to the list of potential collective action plaintiffs it had been ordered to provide.

In August 2012, the district court directed that notice be sent to prospective plaintiffs and expressly ordered Wells Fargo to provide MDL Lead Counsel with a list that included "all individuals . . . who have worked for Wells Fargo as an HMC at any time from February 11, 2008, to March 31, 2011, and who (a) were paid on a commission basis and (b) were classified as exempt workers for purposes of the FLSA." ROA.3043-44. But Wells Fargo took it upon itself to secretly and intentionally omit approximately 8,300 potential plaintiffs from California from the lists it provided to Lead Counsel. *See* ROA.7552-53. Lead Counsel uncovered that deceptive omission after noticing a discrepancy—of more than 6,000— between the number of potential plaintiffs Wells Fargo previously estimated and the number of names Wells Fargo actually identified and after an inadvertent disclosure by a Wells Fargo representative at his deposition. *See* ROA.3894-95.

Eventually it came out that Wells Fargo was relying on the *Lofton* settlement as its justification for secretly withholding the names of 8,300 HMCs from California. ROA.7552-53. In essence, Wells Fargo unilaterally determined that it had a valid *res judicata* defense to those potential plaintiffs' claims and granted itself summary judgment on that defense, without advising either the district court or plaintiffs' counsel that it had done so.

Lead Counsel also learned that, although the *Lofton* settlement had originally been reached and approved by the California state court in 2011, as of June 2013, the Lofton Settlement was being challenged in the trial court, and a related appeal was pending, due to the intervention of a class member who purported to represent 600 absent class members. *See* ROA.3895 n.2 (citing *Maxon v. Initiative Legal Group APC*, No. A136626, in the California First Court of Appeal, and Temporary Restraining Order and Order to Show Cause, *Lofton v. Wells Fargo Home Mortgage*, No. CGC-11-509502, Super. Ct. of Calif., Cnty. of San Francisco (Sept. 14, 2012)).

After getting to the bottom of what Wells Fargo had done, Lead Counsel filed a motion to enforce the district court's order providing that Wells Fargo produce a list that included the 8,300 HMCs from California. ROA.3894. After further briefing and oral argument before a magistrate and the district court, the district court agreed with plaintiffs that its order did not authorize Wells Fargo to exclude California HMCs from the list and that Wells Fargo's preclusion defense was a matter to be handled by a motion for summary judgment, not by Wells Fargo's secret decision to grant itself that relief. ROA.7553, 8702.

Notice of this FLSA collective action was sent to the 8,300 HMCs from California, *see* ROA.8702, 9121-22, and 1,516 California HMCs opted to join this FLSA action as plaintiffs, *see* ROA.13061. Of the 1,516 California HMCs whose FLSA claims are at issue in this appeal, 1,283 of them filed claim forms and

received compensation in the state-court *Lofton* settlement, and 233 of them neither opted out of nor filed claim forms in *Lofton* and so have received no compensation at all.  ROA.13061, 13086-87.

Wells Fargo moved for summary judgment that the *Lofton* settlement precluded the claims of all the California HMCs, regardless whether or not they received compensation.  ROA.12884.  The first appeal arising from the *Lofton* action was still pending in the California state court of appeal when Wells Fargo filed its summary judgment motion on September 2, 2014.  *See* ROA.13450-71.

## II.     *Lofton*

### A.     Origins of the *Lofton* action and settlement

*Lofton*'s history dates back to 2005, when class counsel, Kevin McInerney, filed a class action on behalf of HMCs in California against Wells Fargo, *Mevorah v. Wells Fargo Home Mortgage* in California state court.  ROA.14061.  Wells Fargo removed *Mevorah* to the Northern District of California, which granted plaintiff's motion for class certification.  *Id.*  The Ninth Circuit vacated the certification order.  *Id.*  On remand, the *Mevorah* district court denied plaintiff's renewed class certification motion. *Id.*  *Lofton* is a separate litigation, which was filed (and promptly settled) later.

On November 8, 2010, and February 15, 2011, Wells Fargo and *Lofton* Class Counsel mediated and reached an agreement in principle.  ROA.14314.  The *Lofton* action was filed on March 24, 2011.  ROA.14333.  By March 30, 2011,

days after *Lofton* was filed, *Lofton* Class Counsel and Wells Fargo had executed a joint stipulation of settlement and release.  ROA.14329-30.  The California trial court preliminarily approved the settlement on April 27, 2011.  ROA.13013-14.

### B.     *Lofton* class notice and release

The *Lofton* proceeding was the California equivalent of a federal Rule 23 opt-out class action.  *See* ROA.14332.

The notice sent to class members described *Lofton* as involving only state-law wage-and-hour claims: "This class action lawsuit alleged that Wells violated the **California Labor Code** and the **California Business and Professions Code**, and engaged in other allegedly unlawful conduct, by improperly designating HMCs in California as 'exempt' from **California's** overtime compensation protections."  ROA.14333 (emphasis added).

The class notice mentioned the FLSA only once, in cryptic fashion, in the release provision: "The Class Members' Released Claims include claims meeting the above definition under any and all applicable California or federal laws, statutes, regulations, and Wage Orders including any existing under the Fair Labor Standards Act of 1938, as amended, and California political subdivisions and municipalities."  ROA.14334-35.  The wording and punctuation of that sentence suggests that the reference to the FLSA includes only "Wage Orders" existing thereunder.  *Id.*  The release further provided: "Notwithstanding the foregoing,

nothing in this Settlement releases any claims that cannot be released as a matter of law." ROA.14335.

The release appeared only in the body of the class notice. The claim form that class members actually signed and returned did not reprint or expressly reference the release, nor did it contain any reference to the FLSA. ROA.14334-36, 14340-41.

### C. Irregularities, misconduct, and conflicts affecting the *Lofton* settlement

Although the *Lofton* settlement was quickly consummated and judicially approved without objection in 2011, serious irregularities affecting that proceeding came to light years later, in part due to California state court proceedings in which Lead Counsel participated on behalf of two of the California HMCs who sought to intervene.

### 1. Post-judgment procedural history of *Lofton*

In 2012, more than a year after final approval of the settlement, David Maxon sought to intervene to challenge the Lofton settlement. (Maxon died in 2015, and his widow, Terri Maxon, has since been substituted for him in the ongoing Lofton proceedings.) Maxon was a Lofton class member who, in addition to being represented by Lofton Class Counsel, had also been represented by a group of lawyers calling themselves the Initiative Legal Group (ILG). *E.g.*,

ROA.14384.    ILG's clients included approximately 600 of the Lofton class members (the ILG clients).  ROA.14386.

Maxon alleged that ILG had misappropriated the vast bulk of a secret $6 million side payment from Wells Fargo that should have been allocated primarily among the 600 ILG clients in the Lofton class.  ROA.14384.  Among other relief, Maxon sought a temporary restraining order requiring the deposit of the ILG fees into the registry of the court.  *See* ROA.14384. At a hearing held on September 13, 2012, the *Lofton* court granted Maxon's intervention and ordered ILG to deposit its fees into an account subject to the court's supervision.  ROA.14397.

> Addressing counsel for ILG, the *Lofton* court said:

> Do you realize the depth of the misconduct that it appears that your clients engaged in? Members of the bar who owe highest ethical obligations? . . . Your clients withheld material information. They violated their ethical obligations of disclosure and fair dealing . . . [T]hey are taking class-action attorneys' fees without having ever presented them to the Court.

ROA.14098-100.

The court was equally dismissive of arguments made by Wells Fargo. When Maxon's counsel moved to strike pleadings filed by Wells Fargo because they were not properly authenticated and because they "contain a series of facts that Your Honor has already speculated did not appear to the Court to be true," the court responded: "I'm going to deny the motion to strike and give the weight to the unsupported factual statements it deserves, zero."  ROA.14123-24.

The court further ordered a show-cause hearing for two weeks later to consider whether to order corrective notice to Lofton class members and whether releases solicited from ILG plaintiffs were unenforceable. ROA.14141-42. Prior to the show-cause hearing, scheduled for September 28, 2012, ILG filed a notice of appeal, which resulted in an automatic stay of the case. *See* ROA.13459.

The California Court of Appeal decided the appeal on October 22, 2014, while Wells Fargo's summary judgment motion in this case was still pending. *Lofton v. Wells Fargo Home Mortg.*, 230 Cal. App. 4th 1050 (2014) (opinion reprinted at, *e.g.*, ROA.13450-70). The court of appeal affirmed the grant of the TRO and remanded the Lofton case for further proceedings. *See id.* at 1069. In its opinion, the court of appeal noted that the California trial court's "equitable authority 'is not restricted to setting aside the former judgment; to the contrary, the court has power to provide any appropriate equitable remedy....'" *Id.* at 1062.

The court of appeal further noted:

> In this case, the record establishes that, despite entry of a final judgment, the Lofton settlement was incomplete in two critical respects. First, as set forth more fully above, the trial court was advised repeatedly and falsely that because ILG had negotiated a separate settlement with Wells Fargo, its clients were going to opt out of the class action. . . . . Second, assuming ILG's clients as class members were properly advised of their rights and affirmatively chose to remain members of the class, the court was never advised that the supplemental common fund settlement was primarily for attorney fees or given an opportunity to consider the reasonableness of the award.

*Id.* at 1063.

After remand, in the California trial court, there was "a flood of activity." *Lofton v. Wells Fargo Home Mortg.*, No. CGC-11-509502, 2015 WL 4590871 (Cal. Super.), *1 (opinion and order reprinted at, *e.g.*, ROA.14059-82):

> On June 24, 2015, [the California trial] Court held a hearing on eleven matters: (1) disposition of the remaining funds—$4,921,140.04—on deposit with the Court pursuant an order issued on April 29, 2015; (2) intervenor Terri Maxon's motion for a permanent injunction; (3) class member Linda Summers' motion to vacate the judgment; (4) Ms. Summers' motion to intervene; (5) a motion to intervene by class members Daniel Robert Spotts and Thomas R. Sebring; (6) an order to show cause whether a subclass should be certified; (7) a motion by Chavez & Gertler LLP to be appointed interim lead counsel; (8) an order to show cause why a preliminary injunction should not issue; (9) class representative Dawn Lofton's motion to disqualify attorneys Mark Yablonovich and Burke Huber; (10) intervenor Maxon's motion to disqualify attorneys Mark Yablonovich and Burke Huber; and (11) intervenor Maxon's motion for attorneys' fees.

*Id.*

On July 16, 2015, while Wells Fargo's summary judgment motion in this case was still pending, the California trial court issued an order providing as follows:

> 1) The funds currently on deposit with the Court pursuant to the April 29, 2015 Order ($4,921,140.04 plus any accrued interest), plus those funds here ordered to be deposited with the Court by ILG no later than July 30, 2015 ($526,891, see number 2 below), less any award of attorneys' fees to counsel for intervenor Maxon, and less the costs of administering the following distribution, are to be distributed to those members to the Lofton Class who previously made claims, including the ILG Clients, on a pro rata basis in proportion to each class members' prior award in Lofton. Such distribution is to happen by a date to be determined after the Court holds a hearing to determine the

mechanics of such distribution, and after the Court has determined whether to award any fees to Maxon's counsel.

2) No later than July 30, 2015, Initiative Legal Group, APC, must deposit $526,891 with the San Francisco Superior Court. Counsel for ILG may call the Clerk of Department 305 for the specifics of the Superior Court account information to effectuate deposit with the Court. No later than August 7, 2015, counsel for ILG must file a declaration stating whether such a deposit has been made, and if so, obtain a receipt for the deposit and attach it to that declaration.

3) The Court will hold a hearing on July 31, 2015 at 9:30 a.m. to determine the mechanics of distributing the funds to class members. No later than July 27, 2015, Class Counsel, counsel for Wells Fargo, and counsel for intervenor Maxon shall jointly file: (1) a cost proposal from Rust Consulting (or any other qualified class action settlement administrator) for administering such distribution; and (2) a proposed letter to the recipients of the distribution, to accompany such distribution.

4) At the hearing on July 31, the Court will set a further hearing date on intervenor Maxon's motion for attorneys' fees.

5) Intervenor Maxon's motion for an injunction is denied.

6) Class member Linda Summers' motion to vacate the judgment is denied.

7) Class member Linda Summers' motion to intervene is denied.

8) Class members' Daniel Robert Spotts' and Thomas R. Sebring's motion to intervene is denied.

9) The Court will not certify a subclass of ILG Clients.

10) Chavez & Gertler's motion to be appointed interim lead counsel is denied.

11) No preliminary injunction will issue. The temporary restraining order is hereby dissolved.

12) Class representative Lofton's motion to disqualify attorneys Mark Yablonovich and Burke Huber is denied.

13) Intervenor Maxon's motion to disqualify attorneys Mark Yablonovich and Burke Huber is denied.

*Id.* at \*15-16.

Multiple appeals from that order are now pending, including an appeal of the

California trial court's order denying Linda Summers' motion to vacate the Lofton

judgment. *See* ROA.14210-11; *Lofton v. Wells Fargo Bank N.A.* (Case No. A146282 (Cal. Ct. App.) app. pending), *available at* http://goo.gl/NLQPEO (last visited March 7, 2016).

### 2. Misconduct and irregularities in the *Lofton* settlement come to light during the course of proceedings on remand.

In the course of proceedings in the California trial court following remand, facts came to light about the irregularities, conflicts, and misconduct that tainted the original *Lofton* settlement proceedings and the involvement in such improprieties by ILG, *Lofton* Class Counsel, and Wells Fargo.

Wells Fargo and *Lofton* Class Counsel aided a diversion of nearly $6 million in settlement proceeds to a third-party law firm that performed no services for the *Lofton* class, in breach of the duties of candor to the state court and class. Even after discovery of the diversion, Wells Fargo and *Lofton* Class Counsel tried to short-change the class in re-distributing the funds, a position opposed by MDL Lead Counsel and rejected by the *Lofton* trial court.

The ILG settlement was reached at the February 2011 mediation, at which Wells Fargo agreed to pay $6 million to the ILG firm that was pursuing claims on behalf of 600 individual HMCs. ROA.14063, 14067-69. At the same mediation, a settlement was reached between Wells Fargo and *Lofton* Class Counsel, by which the bank agreed to pay $19 million to resolve claims asserted by an uncertified class of HMCs in a yet-to-be-filed state-court class action. ROA.14063.

In its June 16, 2015 order, the *Lofton* court condemned the ILG payment as a "side-deal" designed to "arrogate" class action fees "without court approval." ROA.14060. That settlement "required approval by [that] Court," but no approval was sought or obtained. *Id.* *Lofton* Class Counsel were aware *at the mediation* of the key terms of the ILG settlement, including its amount and Wells Fargo's insistence that the ILG plaintiffs be included in the settlement class. *See* ROA.14217. Class counsel repeated these acknowledgements at the April 24, 2015 hearing. ROA.13840.

On April 27, 2011, the *Lofton* court held a preliminary fairness hearing. An appearance was made by ILG attorneys who requested a two-week continuance to consider "the effect of this settlement upon our case." ROA.14064-65. In response, class counsel admitted, "Wells has a separate settlement agreement with these folks," and "the thought of the settlement was that these gentlemen representing the two firms would have all their individual plaintiffs opt out." ROA.14065.

As the *Lofton* court found, Wells Fargo "confirmed" that representation, by telling the court that "we are proceeding I think consistent with that resolution." *Id.* In so finding, the court rejected Wells Fargo's purported justification for its actions on the basis that the side-deal was "tentative" and not ripe for disclosure to the court, s*ee* ROA.12903, 13403-04, finding instead that Wells Fargo "confirmed" its separate settlement with ILG. On the basis of the representations made at that

first hearing, the court preliminarily approved the settlement, directed notice to the class, and scheduled a final fairness hearing. *See* ROA.13013-14.

For the final fairness hearing, set for July 2011, *Lofton* Class Counsel filed motions in support of approval of the class settlement and a fee award of $6.33 million and expenses of $250,000. The papers reiterated the representations previously made to the court concerning the ILG settlement:

> Approximately 600 HMCs filed individual suits using the offices of [ILG]. The settlement negotiated on February 15, 2011, with ILG, called for a gross settlement of approximately $6 million, or an average gross distribution of $10,000 per individual plaintiff. Wells rationalized this higher figure by the fact that these individuals had been willing to sign a retainer and commence a separate lawsuit. *It was contemplated that the ILG clients would recover from the richer per capita fund secured by ILG for its individual clients and opt out of the $19 million class settlement.*

ROA.14091-92 (emphasis added).

As class counsel later conceded to the *Lofton* court, the opt-out by ILG clients "didn't happen," and the court "was not informed." ROA.14092. Instead, the ILG plaintiffs submitted claims forms and participated in the class settlement. "None of the ILG Clients opted out of the *Lofton* class." ROA.14066.

The failure of the ILG plaintiffs to opt out of the class was known to class counsel and Wells Fargo. At the final fairness hearing, the claims administrator noted that *56* class members had opted out of the class, a number far fewer than the *600* ILG plaintiffs. ROA.14219. Further, by class counsel's admission, based on a

conversation with an ILG plaintiff during the notice period, it "suspected that some of ILG's clients might be submitting claim forms." ROA.14230.

In response, class counsel turned a blind eye. It did not tell the court that what it had said about the ILG plaintiffs opting out of the settlement was inaccurate. It did not tell the court that the ILG plaintiffs were "double-dipping," by participating in both the ILG settlement and class action settlement. It did not tell the court that the recovery of class members was being diluted. While class counsel tried to justify its conduct by claiming that it was not the intent of the settlement to permit "double-dipping," the court rejected that argument, concluding that such an intention was "not expressed in the moving papers." ROA.13840.

After the fairness hearing, with the evidence of ILG's fraudulent conduct mounting, *Lofton* Class Counsel did nothing. In October 2011, Wells Fargo told class counsel that "virtually all" ILG plaintiffs had submitted claims to participate in the class settlement. ROA.14220. No longer able to ignore the harm to the class, and recognizing that the class had an interest in the secret side deal, class counsel requested reimbursement from Wells Fargo. Wells Fargo said no, and class counsel acquiesced. *Id.* All the while, class counsel was pocketing nearly $6.8 million in court-awarded fees and expenses, ROA.14067, while disregarding the interests of and obvious harm to the class.

### *Failure to disclose ILG's misappropriation of settlement proceeds*

To paper over the award of fees to ILG, the parties invented a "supplemental release," which ILG plaintiffs were required to execute in exchange for a $750 payment. On the basis of the "releases," ILG clients received a mere $450,000, while ILG kept over $5.5 million.  ROA.14067-69.  The "release" was a sham, designed to divert class settlement proceeds to the ILG lawyers:

- Over 570 of the 600 ILG clients executed the supplemental releases in early 2012, which according to the *Lofton* court represented "the only document[] reflecting an agreement by Wells Fargo to distribute $5.9 million to ILG and the ILG clients."  ROA.14069.

- The court rejected the proposition that the releases constituted a settlement between the ILG plaintiffs and Wells Fargo, saying it "[s]eems to me a settlement agreement between the clients and ILG is not a settlement agreement between the clients and Wells Fargo."  ROA.13980.

- The court realized that the releases were a pretense to disguise the side-payment to the ILG lawyers, asking "how is it credible that Wells Fargo would pay $6,000,000 to settle $450,000 in claims?" There was no response. ILG counsel said, "it is credible from the standpoint that that's exactly what occurred here." Wells Fargo counsel echoed, "That's what occurred in February of 2012."  ROA.13973.

As the *Lofton* court found, the supplemental "releases" were "fraught with problems."  ROA.13848.

By January 2012, when ILG began soliciting the fraudulent releases from its clients, *Lofton* Class Counsel had concluded, by its own admission, that it was "obvious" that ILG "was appropriating almost all of the $6 million for fees."

ROA.14220-21. But class counsel did nothing to protect the interest of the class. As class counsel admitted to the *Lofton* court, the supplemental release was "bogus" and "just made up" and the claim on which it was based—failure to produce personnel records—already was "clearly released" in the *Lofton* settlement. ROA.14005.

Class counsel (and Wells Fargo) knew there was no basis for ILG to receive a fee in *any* amount, much less abscond with 90% of the secret payment. As class counsel conceded, there was "no showing of what work [ILG] did" and "no showing of what value that they added to their clients." ROA.14003.

Nevertheless, class counsel (and Wells Fargo) never told the court that ILG was receiving a fee, even though they knew it was unjustified. *See* ROA.14227-29 (class counsel knew that ILG to receive fees, but not that it was "lion's share of $6 million); ROA.13279 (in entering supplemental release, "Wells Fargo has not specified or agreed to any allocation toward attorneys fees"). In short, nobody was watching out for the class.

### Class counsel fails to defend class's interest in settlement proceeds

Class counsel had many opportunities to redress ILG's misappropriation of settlement funds, but on each occasion failed to act.

At the September 2012 hearing on Maxon's TRO request, class counsel took no position on the relief sought by Maxon, including what to do with the ILG fees. Instead, the court on its own was left to defend the class: "I profoundly disagree

with the approach you and your colleagues are taking here, that it is only the ILG clients that have a stake in the $6 million . . . it is the entire class that has an interest." ROA.14127.  Class counsel made no response and did nothing.  *Id.*

The court was aghast at the conduct of class counsel and Wells Fargo. "[G]ood cause," it concluded, existed to believe the "entire class" had been "badly disserved." ROA.14097.  The court was "troubled" by class counsel's "turning a blind eye to or participation" in "egregious misconduct," joined by "a distinguished law firm" representing "one of the great banking institutions of this country." *Id.*  In fact, by the end of the hearing, the court concluded that "I do not think that [class counsel] McInerney is in a position to represent the class anymore, and I think there needs to be new class counsel." ROA.14129.

When the California appellate court affirmed the TRO and remanded the case for further proceedings, it found that the trial court was "repeatedly and falsely" advised that, because ILG had negotiated a separate settlement with Wells Fargo, its clients were going to opt out of the class.  When that did not occur, class counsel "should have discussed" the "changing distribution of settlement fund" with the court. *Lofton v. Wells Fargo Home Mortg.*, 230 Cal. App. 4th 1050, 1063. "Clearly that did not happen." *Id.*

To protect the interests of the 1,516 California opt-in plaintiffs in this proceeding who are absent class members for purposes of *Lofton*, MDL Lead Counsel filed a motion to intervene. On behalf of the California plaintiffs, as

represented by collective action members Daniel Spotts and Thomas Sebring, MDL counsel sought the following relief:

- For the 233 plaintiffs who received no payment in the settlement, but whose claims here Wells Fargo contends are barred by the *Lofton* judgment, an opportunity to opt out of that case and litigate their federal overtime claims in this MDL proceeding; and

- For the 1,283 plaintiffs who submitted claims forms in *Lofton*, clarification that the settlement did not release their federal law claims, including those under the FLSA, but instead extinguished only their state law claims.

*See* ROA.13816-19.

Spotts and Sebring also requested the *Lofton* court to allocate the $6 million to the *whole* class, ROA.13819-21, in opposition to class counsel, who urged a distribution scheme that favored the 600 ILG plaintiffs at the expense of the rest of the class. ROA.13787-91.

After the June 24 hearing, the court granted the relief sought by Spotts and Sebring to divide the $6 million among all class members, rejecting the distribution scheme pushed by class counsel. ROA.14075. The court further ordered that ILG disgorge $526,891 in funds that are traceable to the settlement proceeds paid to ILG, including $504,391 paid to certain ILG clients in exchange for a release of claims against ILG and $22,500 paid to certain purported class representatives, both without court authorization. ROA.14076. None of this relief was requested by *Lofton* Class Counsel.

**Lofton *court makes findings implicating Wells Fargo in the misconduct.***

As the California trial court's July 16, 2015 order explained, the court found,

among other things, that

> ILG reached a side-deal with defendant Wells Fargo in which ILG
> was to receive attorneys' fees for work performed on behalf of
> members of the class in this action, for claims which were resolved
> and extinguished by the settlement and judgment in this action. In
> short, these fees are properly construed as class action attorneys' fees
> which required approval by this Court.

ROA.14060.

The California trial court's order made specific findings relevant to Wells

Fargo's involvement in the misconduct that tainted the *Lofton* settlement:

- The plot to "arrogate" over $5 million in class action attorneys' fees
  arose when "ILG reached a side-deal with defendant Wells Fargo." *Id*.
  That payment "required approval by this Court." *Id.*

- Wells Fargo does not deny that it failed to obtain that approval, but has
  long sought to justify its omission by claiming the ILG settlement was
  "tentative" and not yet ripe for disclosure to the Lofton court. *See*
  ROA.12903, 13403-04.   The July 24 order expressly rejects that
  contention, finding instead that Wells Fargo "confirmed" to the Lofton
  court that at the time of the preliminary fairness hearing it had reached a
  separate settlement agreement.  ROA.14065.

- At that same hearing, Wells Fargo also confirmed representations made
  by class counsel that ILG "would have all their individual plaintiffs opt
  out," telling the court that "we are proceeding I think consistent with that
  resolution." *Id.*  It is undisputed that none of the ILG plaintiffs opted out
  of the class settlement, a fact never disclosed to the court.

- Without the knowledge, consent, or authorization of the ILG plaintiffs,
  Wells Fargo and ILG reached a "supplemental" agreement in January
  2012 providing for an additional payment of $750 to each ILG plaintiff in
  exchange for a second "confidential" release. ROA.14068-69. Although
  Wells Fargo has represented that the confidential releases are the only

documents reflecting its agreement to distribute nearly $5.9 million in settlement proceeds, the July 16 order expressly rejects any finding that the purported release is "an enforceable agreement." ROA.14069.

Wells Fargo has attempted to justify its conduct on a number of grounds, including that disclosure of the ILG settlement was not required to the Lofton court prior to the fairness hearing because only "tentative terms" had been reached. *See* ROA.12903, 14065. But contemporaneous events tell a different story. At the preliminary approval hearing on April 27, 2011, the Lofton court was assured that the settlement was comprehensive and embraced all parties appearing at the hearing, which included ILG counsel. Wells Fargo counsel represented: "The parties, all of the parties and their counsel, who are here resolved these cases in mediation." ROA.13224. Following up on that representation, some two months later and just five days before the opt-out deadline, Marc Primo of ILG wrote to Wells Fargo counsel to confirm the parties' agreement: "At the mediation, the Wells Fargo agreed to a confidential settlement whereby Wells Fargo would pay Initiative Legal Group LLP $6,000,000 (six million) in satisfaction of the firm's fees, expenses and costs associated with all of the current pending litigation that the firm has against Wells Fargo." ROA.13236. Noting the approaching opt-out deadline, Primo added that ILG was "detrimentally relying" on its understanding of the agreement. ROA.13237. In response, Wells Fargo wrote to "reconfirm" the payment. ROA.13244. Simply put, Wells Fargo and ILG had a done deal, not mere "tentative terms."

Wells Fargo also has argued that it played no role in the allocation of the $6 million payment between ILG and its clients and is not responsible for any agreement between ILG and its clients. This argument ignores Wells Fargo's true role in facilitating ILG's conduct. According to court documents filed by intervenor Maxon, the miniscule portion of the $6 million allocated to the ILG plaintiffs—$750 per each of the 600 plaintiffs—was paid in satisfaction of claims asserted in *Mather v. Wells Fargo Bank, N.A., San Francisco County Superior Court*, No. CGC-10-505630, a California state court action seeking statutory penalties under the California Labor Code related to employee access to their personnel files. But as Wells Fargo has acknowledged, this claim was extinguished by the Lofton release, *see* ROA.13250, and indeed, ILG itself specified *Mather* as being an action resolved in the Lofton settlement. ROA.13236, 13238.

In short, there was no need to allocate any portion of the payment to the already-settled *Mather* action other than as a means to give the settlement a veneer of having provided some benefit to the ILG plaintiffs, an event Wells Fargo apparently willingly assisted. And even if Wells Fargo had no role in the allocation of the settlement amount, that fact does not excuse its failure to provide notice of the payment to the *Lofton* court.

The real reason for the failure to disclose the ILG payment is straightforward: the parties wanted the payment to be a secret. To that end, the

settlement reached at the February 2011 mediation was described in their correspondence as "confidential." ROA.13236. Even more extraordinary, a draft settlement agreement proposed by ILG requires that the parties "shall not disclose, either publicly or privately, to any entity, person, party or court, the existence of this Agreement," with violators liable for the greater of actual damages or liquidated damages of $500,000. ROA.13239-40. While this agreement was never executed by the parties (as Wells Fargo is likely to point out), the release ILG plaintiffs ultimately were required to sign was denominated as a "confidential" individual release. ROA.13279.

Consistent with the secretive nature of the ILG payment, Wells Fargo's corporate representative designated to testify concerning Lofton settlement issues could not state whether Wells Fargo ever entered into a written agreement with ILG or its clients: "I would be the person that would know that we ultimately did make a $6 million payment to settle that case; whether there was a specific written agreement to that effect, I do not know." ROA.13281.

### *Pending appeals from* **Lofton** *order*

Five appellants filed notices of appeal from the Lofton court's July 16, 2015 order, and three appellants' appeals are still pending. *Lofton v. Wells Fargo Bank N.A.* (Case No. A146282 (Cal. Ct. App.) app. pending), *available at* http://goo.gl/NLQPEO (last visited March 7, 2016). One of the pending appeals is by ILG, which was ordered to disgorge the $5.5 million it misappropriated.

Another is by class member Summers, whose motion seeking to vacate the *Lofton* settlement judgment was denied in the July 16 order.

### III.    California HMCs Apprise The District Court Of Problems With *Lofton*.

In this case, the California HMCs brought the numerous improprieties in the *Lofton* proceedings to the attention of the district court in supplemental letters and briefing on Wells Fargo's motion for summary judgment.   ROA.13799, 14191, 14194.   The California HMCs also pointed out that appeals from the California trial court's July 2015 order were (and today still are) pending, including from the portion of the order that denied a motion to vacate the *Lofton* settlement judgment. ROA.14209-11.   Despite those defects in the *Lofton* settlement and the uncertainty regarding the finality of the *Lofton* settlement judgment, the district court granted summary judgment holding that the *Lofton* settlement precluded the FLSA claims of the California HMCs in this action.   Plaintiffs timely appealed.

### SUMMARY OF THE ARGUMENT

The FLSA provides that no employee becomes a party to an FLSA action without giving affirmative written consent that is filed in the court hearing the action.   That procedure is the opposite of a Rule-23-style class action, in which absent class members remain in the class and are bound by any judgment unless they affirmatively opt out.   For that reason, an opt-out class action proceeding may not be used to adjudicate or settle FLSA claims, and a judgment or release arising from such a proceeding cannot bind absent class members as to their FLSA claims.

Standard *res judicata* principles show why FLSA plaintiffs cannot have their FLSA claims precluded by a prior opt-out judgment. If those absent class members did not file an affirmative written consent in the class-action court, they did not become parties plaintiff to that action as to their FLSA claims. And for *res judicata* to apply to a party to a later action, that party must have been identical to or in privity with a party in the earlier action.

Further, the Full Faith and Credit Act does not permit state preclusion law to override conflicting federal provisions nor to accord preclusive effect to a judgment that did not satisfy due process. California preclusion law would not apply *Lofton* to preclude the California HMCs' FLSA claims. But even if it would, a federal court should not do so because that would conflict with the FLSA's opt-in requirement, and because absent class members did not receive due process in the *Lofton* proceeding.

Even if an opt-out class action proceeding could ever preclude FLSA claims, *Lofton* could not do so for multiple reasons. *Lofton* class members were told that *Lofton* involved only state-law claims and were never notified that their FLSA claims were at stake. There is no assurance that any court reviewed the *Lofton* settlement for fairness and reasonableness as to FLSA claims. And any such scrutiny would have been compromised by the misconduct and concealment that tainted the *Lofton* proceedings. Wells Fargo was complicit in that misconduct, and *Lofton* Class Counsel did nothing to check it, all to the detriment of *Lofton* class

members.  In any event, the very order in which the California trial court made findings as to the misconduct is the subject of multiple pending appeals that have the potential to affect the settlement, meaning *Lofton* lacks the requisite finality.

At the very least, the 233 California HMCs who filed no claim forms in *Lofton* and have received no compensation should not have their FLSA claims precluded.  There can be no question that those employees have never received fair and reasonable compensation to vindicate their non-waivable substantive FLSA rights.

## STANDARD OF REVIEW

This Court "review[s] a district court's grant of summary judgment de novo, applying the same standards as the district court."  *Hagen v. Aetna Ins. Co.*, 808 F.3d 1022, 1026 (5th Cir. 2015).  Preclusion is an affirmative defense, and thus it was Wells Fargo's burden to prove that there are no genuine issues of material fact as to *Lofton*'s preclusive effect.  *See Taylor v. Sturgell*, 553 U.S. 880, 907 (2008).

## ARGUMENT

**I.     Because The FLSA Requires That Plaintiffs Opt Into A Collective Action, The Opt-Out *Lofton* Class Action Settlement Had No *Res Judicata* Effect On The California HMCs' FLSA Claims In This Case.**

This case presents an issue of first impression.  This Court has not previously decided the precise issue whether an opt-out, Rule-23-type class action process may be used to resolve employees' FLSA claims.  Nor has any other federal court of appeals or the Supreme Court resolved that issue.

60

However, relevant precedent from this and other Circuits supports the conclusion that an opt-out proceeding cannot resolve the FLSA claims of absent class members. And a majority of federal district courts to have considered the issue agree that FLSA claims may not be resolved on an opt-out basis as a matter of law. That rule accords with the plain statutory text of the FLSA, which makes clear that individual employees' FLSA claims may not be adjudicated without their affirmative, written consent.

Congress has declared, in plain language, that employees can only become party plaintiffs to a case asserting a claim under the FLSA if they give their written consent to become a party, and if that consent is then filed in the court where the FLSA claim is pending. No FLSA collective action was certified in *Lofton*. No California HMCs were notified that they had the right to opt into *Lofton* to litigate or settle their FLSA claims. No consents to join the action or participate in an FLSA settlement were filed in the *Lofton* court. Consequently, this Court should rule that *res judicata* does not preclude the 1,516 employees who did not opt-out of the *Lofton* class action, and who could not have pursued an FLSA claim on an opt-out basis in that litigation, from pursuing their FLSA claims in the present case.

### A. Section 216(b) Mandates An Opt-In Procedure For FLSA Claims, Meaning An Opt-Out Judgment Cannot Bind FLSA Plaintiffs.

"As in all cases involving statutory construction, our starting point must be the language employed by Congress, and we assume that the legislative purpose is

expressed by the ordinary meaning of the words used." *Am. Tobacco Co. v. Patterson*, 456 U.S. 63, 68 (1982) (internal citations and quotation marks omitted). Thus, the Court should begin with the relevant language of §216(b): "No employee shall be a party plaintiff to any such [*i.e.*, FLSA] action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought." 29 U.S.C. §216(b); *Westerlund v. Fireman's Fund Ins. Co.*, 21 Fed. R. Serv. 2d 12 (N.D. Cal. 1975) (explaining that all members of a class who seek to benefit from statutory claims that are subject to §216(b) "must file written consent with the Court" and citing *LaChapelle v. Owens–Illinois, Inc.*, 513 F.2d 286, 289 (5th Cir. 1975) (*per curiam*)).

This Court has long recognized that §216(b) mandates a special procedural regime for FLSA claims: "As the last sentence just quoted provides, prospective claimants must opt-in under the FLSA, fundamentally distinguishing these suits from Rule 23 class actions in which a prospective plaintiff must opt-out. Collective actions bind only the opt-in plaintiffs." *Roussell v. Brinker Int'l, Inc.*, 441 Fed. Appx. 222, 225 (5th Cir. 2011) (internal citation omitted) (citing *Sandoz v. Cingular Wireless LLC*, 553 F.3d 913, 916 (5th Cir. 2008)). Thus, "Rule 23(c) provides for 'opt out' class actions. FLSA [§216(b)] allows as class members only those who 'opt in.' These two types of class actions are mutually exclusive and irreconcilable." *LaChapelle*, 513 F.2d at 289.

Section 216(b)'s opt-in requirement has at least three fundamental implications for applying *res judicata* principles to settlements like the *Lofton* settlement. First, employees cannot be bound by a judgment adjudicating FLSA claims unless they have affirmatively given their written consent to become a party plaintiff in a pending FLSA case, and that consent is then filed with the court in which the action is pending. It is undisputed that none of the 1,516 *Lofton* plaintiffs gave §216(b) written consent, and that no such consent was filed with the *Lofton* court. Second, FLSA claims cannot be pursued on a representative basis. The *Lofton* class representative lacked standing to litigate or settle FLSA claims on behalf of any of the absent class members, including those present here. Third, plaintiffs here, who did not have the opportunity to give their written consent to become party plaintiffs in *Lofton* to adjudicate their FLSA claims, were not parties before the *Lofton* court as to their FLSA claims.

Section 216(b)'s opt-in requirement does not mean that FLSA collective actions can never be finally settled. It does mean, as a district court within this Circuit recently recognized, they can only be settled as to those plaintiffs who file §216(b) written consents that are filed with the pending court. *Akins v. Worley Catastrophe Response, LLC*, 921 F.Supp.2d 593, 597 (E.D. La. 2013). In addition to being fully consistent with the statutory text, this rule comports with the Supreme Court's recognition that the FLSA is "remedial and humanitarian in purpose." *Tennessee Coal, Iron & R. Co. v. Muscoda Local No. 123,* 321 U.S.

590, 597 (1944). The statute "must not be interpreted or applied in a narrow, grudging manner," *id.*, rather, courts must "construe the FLSA liberally in favor of employees." *Allen v. McWane, Inc.,* 593 F.3d 449, 452 (5th Cir. 2010).

Numerous cases make clear that the procedural regime mandated by §216(b) does not permit settlement of FLSA claims through Rule 23, opt-out procedures. *E.g.*, *Barbosa v. Cargill Meat Solutions Corp.*, 297 F.R.D. 431, 439, 456 (E.D. Cal. 2013) (approving settlement of wage-and-hour claims with express provision that "waivers of claims expressly under the FLSA shall only be binding on the Settlement Class members who opted-in"); *Lounibos v. Keypoint Gov't Solutions Inc.*, 2013 WL 3752965 (N.D. Cal. 2013) (in hybrid action involving state-law claims on behalf of a putative Rule 23 class and also FLSA claims, court rejected a proposed release "not entirely consistent with the FLSA's opt-in requirement"); *McClean v. Health Sys., Inc.*, 2013 WL 594204, at *2 (W.D. Mo. 2013) (rejecting proposed settlement provision purporting to bind FLSA collective action members who failed to opt out); *Tijero v. Aaron Bros., Inc.*, 2013 WL 60464, at *7 (N.D. Cal. 2013) (same); *La Parne v. Monex Deposit Co.,* 2010 WL 4916606 (C.D. Cal. 2010) (approving a settlement conditioned that "only class members who affirmatively 'opt-in' to the Settlement should be bound by the Settlement's release of FLSA liability"); *Kakani v. Oracle Corp.*, 2007 WL 1793774 at *7 (N.D. Cal. 2007) ("Under no circumstances can counsel collude to take away FLSA rights

including the worker's right to control his or her own claim without the burden of having to opt out of someone else's lawsuit.").

As a recent case from the Northern District of California succinctly puts it, "FLSA claims cannot be treated within a class action under Rule 23. That is because FLSA claims are collective action claims that require an affirmative opt-in by written consent on the part of claimants." *Stokes v. Interline Brands, Inc.*, No. 12-CV-05527-JD, 2014 WL 5826335, at *4 (N.D. Cal. Nov. 10, 2014) (declaring it "particularly egregious" that a "proposed settlement improperly [sought] to compromise FLSA claims in a Rule 23 context").

*Lipnicki v. Meritage Homes Corp.*, Civil Action No. 3:10-CV-605, 2014 WL 923524 (S.D. Tex. Feb. 13, 2014) (unpublished)(Costa, J.), disagreed with the proposition that an opt-out class action settlement cannot resolve opt-in FLSA claims. *Id.* at *16. Wells Fargo relied heavily on *Lipnicki* in its summary judgment arguments, and the district court relied on it to grant summary judgment. As discussed further below, *Lipnicki* is highly distinguishable on its facts because as to the prior settlement in that case, "there [was] no indication that the procedures followed in the California case—including the fairness determination—were improper," *id.*, in stark contrast to the improprieties tainting *Lofton*. More fundamentally, however, the California HMCs respectfully submit that *Lipnicki* reached the wrong conclusion on the legal issue whether §216(b) permits FLSA claims to be settled or released on an opt-out basis.

*Lipnicki* noted the existence of the cases "refusing to approve language in a Rule 23 settlement that would release FLSA claims for absent class members." *Id.* But it afforded that case law little weight in determining the issue of "how to apply a broad release in an opt-out class that a court has already approved and upon which parties have relied," regarding that case law as merely suggesting a possibly "wise approach in exercising . . . discretion." *Id.* The settlement-approval holdings, however, are not based on mere prudential considerations. Rather, they are based on emphatic pronouncements that federal statutory law mandated their outcome. *E.g.*, *McClean*, 2013 WL 594204, at *2 (settlement provision "requiring that all collective action members who fail to opt-out of the collective action release their claims" was "*not legal* under the FLSA" (emphasis added)); *Tijero*, 2013 WL 60464, at *7-8 (using Rule 23 opt-out procedures "*would violate* the FLSA" because "*it is contrary to §216(b)* to bind class members to a release of FLSA claims where, as here, the members have not affirmatively elected to participate in the lawsuit by filing a written consent form" (emphasis added)). Those holdings are fully consistent with the text of §216(b) and the purpose behind it, and they go to the core of the main issue before the Court: can FLSA claims be disposed of through a representative, opt-out procedure that violates the procedural requirements of §216(b)?

**B.     Because *Lofton* Class Members Never Became Parties To Any Earlier Opt-In FLSA Collective Action, *Res Judicata* Does Not Bar Their FLSA Claims In This Case.**

Among the cases that have directly addressed whether a prior settlement in a Rule 23-type opt-out class action can preclude absent class members from bringing FLSA claims in later cases, *Donatti v. Charter Communications, L.L.C.*, 11-4166-CV-C-MJW, 2012 WL 5207585 (W.D. Mo. Oct. 22, 2012), is the most consistent with the statutory text and its interpretation by a majority of courts, including this Court.   Indeed, *Donatti* expressly follows this Court's precedent, invoking its statement that "'[i]t is crystal clear that § 16(b) precludes pure Rule 23 class actions in FLSA suits.'" *Id.* at *4 (quoting *LaChapelle,* 513 F.2d at 288 (alteration in original).   In rejecting a *res judicata* argument virtually identical to Wells Fargo's, *Donatti* explains that when—as in this case—there was no certification of an FLSA collective action in the prior case, only an opt-out class action, "the FLSA claims in the settlement agreement" are "simply individual actions on behalf of the named plaintiffs in the case and those plaintiffs who opted in to the settlement agreement." *Id.* (citing *Espenscheid v. DirectSat USA, LLC,* 688 F.3d 872, 877 (7th Cir. 2012), which explains that when a collective action is not certified, there is simply the individual action on behalf of the named plaintiffs).

Under both federal and California law, a required element of *res judicata* is that the parties in the earlier and later actions must be "identical or in privity." *Test Masters Educ. Servs., Inc. v. Singh*, 428 F.3d 559, 571 (5th Cir. 2005); *see*

*Mycogen Corp. v. Monsanto Co.*, 28 Cal. 4th 888, 896, 51 P.3d 297 (2002) ("Res judicata, or claim preclusion, prevents relitigation of the same cause of action in a second suit between the same parties or parties in privity with them."). "This requirement of identity of parties or privity is a requirement of due process of law." *Consumer Advocacy Group, Inc. v. ExxonMobil Corp.*, 168 Cal. App. 4th 675, 690 (Cal. Ct. App. 2008); *accord Clemmer v. Hartford Ins. Co.*, 22 Cal.3d 865, 874 (Cal. 1978)(*en banc*); *see also Matsushita Elec. Indus. Co., Ltd. v. Epstein*, 516 U.S. 367, 378-79 (1996) (class action settlement must accord with due process to bind absent class members).

Because the procedural requirements of §216(b) were not followed in *Lofton*, the settlement and judgment in that litigation do not meet the identity or privity of parties requirement for *res judicata* to apply. Plaintiffs here, because they did not opt into *Lofton* pursuant to §216(b), never became parties to that suit for purposes of adjudicating or settling their FLSA claims. *See Espenscheid*, 688 F.3d at 877; *Sandoz,* 553 F.3d at 916; *LaChapelle*, 513 F.2d at 289. A holding that *res judicata* does not bar plaintiffs in this case, who never became opt-in FLSA plaintiffs in *Lofton*, from pursuing their FLSA claims is the only holding that is fully consistent both with this Court's application of §216(b) in cases like *Roussell*, *Sandoz*, and *LaChapelle* and with the case law from other courts holding that FLSA claims cannot be settled on an opt-out basis.

68

Nor is that holding remotely inconsistent with this Court's holding about private settlement of FLSA claims in *Martin v. Spring Break '83 Productions, L.L.C.*, 688 F.3d 247, 255 (5th Cir. 2012), or with *Martinez v. Bohls Bearing Equipment Co.*, 361 F.Supp.2d 608, 631 (W.D. Tex. 2005), whose reasoning *Martin* approved. Neither case involved an assertion like that here—*i.e.*, that the plaintiffs' FLSA claims had been settled on their behalf in a prior litigation in which they were represented by named plaintiffs in a Rule 23 (or state-law equivalent) context. *See Martin*, 688 F.3d at 249-50, 254-55 (union entered into private settlement on plaintiffs' behalf, and it was established that union had authority to bind plaintiffs individually); *Martinez*, 361 F.Supp.2d at 612 (plaintiff individually signed settlement memorandum). The issue in those cases was whether a private settlement can ever release FLSA claims, not whether named plaintiffs in an opt-out class action can bind absent class members to a release of FLSA claims on a representative basis.

Additionally, and importantly, those cases involved mere factual disputes over the amount of compensation owed—that is, whether employees worked unpaid overtime hours—which this Court carefully distinguished from "guaranteed FLSA substantive rights themselves." *Martin*, 688 F.3d. at 255. The dispute in this case is whether HMCs were entitled to overtime compensation in the first instance, as the FLSA guarantees them a substantive right to that compensation— unless they were properly classified as exempt. Such substantive rights are

mandatory under the FLSA and may not be bargained away or waived. *See, e.g.*, *Lynn's Food Stores, Inc. v. United States Dep't of Labor*, 679 F.2d 1350, 1352 (11th Cir. 1982).

*Lipnicki*'s reliance on *Martin* and *Martinez* to support its holding, 2014 WL 923524, at *14, overlooks the threshold question in this context: whether named plaintiffs in an opt-out class action have authority to compromise *other* employees' FLSA claims on a representative basis. Under the plain language of §216(b)—and this Court's consistent interpretation of that language in cases like *Sandoz* and *LaChapelle*—the answer must be "no."

Affirming the district court's contrary holding would permit an end-run around §216(b)'s opt-in requirement, eviscerating statutory protections that are intended to balance benefits to both employees and employers. Allowing FLSA claims to be compromised through a Rule 23-type opt-out procedure would, on the one hand, divest employees of the direct control over their individual FLSA claims demanded by the statute and judicial admonitions to construe it liberally in favor of employees. 29 U.S.C. §216(b); *see Tennessee Coal,* 321 U.S. at 597; *Allen* 593 F.3d at 452. On the other hand, rather than "free[] employers of the burden of representative actions," *Hoffmann-LaRoche, Inc. v. Sperling*, 493 U.S. 165, 173 (1989)—which Wells Fargo has insisted is a primary goal of §216(b)—allowing that end-run would instead facilitate representative actions. Permitting FLSA claims to be settled on a representative basis would add to the settlement pressure

on defendant employers. And if FLSA claims can be settled in a Rule 23 class action context on a representative basis—despite §216(b)'s opt-in requirement—it is difficult to see what would stop them from being adjudicated on the same basis. *Cf. Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 621-22 (1997) (Rule 23 certification standards apply to all class certifications, including for settlement classes); *Lipnicki*, 2014 WL 923524, at *16 (characterizing the cases refusing to approve opt-out FLSA settlements as merely exercising prudential discretion, rather than enforcing mandatory federal law).

Indeed, if the district court is correct, every wage-and-hour case certified as a class action for state-law claims becomes an impermissible Rule 23-type FLSA class action. Under the theory that, as members of a certified class, employees become parties who could have litigated FLSA claims based on the same factual allegations underlying the state-law claims, employees who fail to opt out will find their claims extinguished by *res judicata* principles, regardless whether those claims were even pleaded, adjudicated, settled, or released in the class action litigation. That result cannot be squared with Congress's deliberate policy by which FLSA claims cannot be litigated in a Rule 23 class action (or its state-court equivalent).

### C.     The Full Faith And Credit Act Does Not Permit, Let Alone Require, An End-Run Around §216(b)'s Opt-In Requirement.

Additionally, the Full Faith and Credit Act does not, as Wells Fargo argued below, mandate a contrary result. California *res judicata* law does not require that *Lofton* be given preclusive effect. But even if it purported to, the Full Faith and Credit Act would not empower state law to trump the federal regime embodied in clear statutory terms. The Act does not require federal courts to follow state preclusion law when the result would be an "irreconcilable conflict" with the provisions of another federal statute. *Matsushita*, 516 U.S. at 381; *Kremer v. Chem. Constr. Corp.*, 456 U.S. 461, 468 (1982). Under the plain language of §216(b) there is such a conflict, if applying state law means that FLSA claims could be resolved on a representative basis in an opt-out class action. For the reasons detailed above, §216(b) requires that FLSA plaintiffs opt in before they can be bound by any judgment. If state law says differently, that is a conflict that cannot be reconciled.

The district court's holding depends on permitting class-action named plaintiffs to litigate or settle FLSA claims for other employees on a representative basis, which the plain text of §216(b) says cannot be done. The issue is not, as in *Matsushita*, whether FLSA claims are the type of claim that could be barred by state preclusion law or settled in a state-court class action even if the state court lacked subject matter jurisdiction. The issue here is who can settle FLSA claims

and under what procedure; and §216(b) provides that only employees who affirmatively opt in to an FLSA settlement can do so.

*Matsushita* illustrates why *Lofton* does not preclude FLSA claims here. *Matsushita* focused on whether the federal securities claims at issue were the type of claim that the Delaware courts would find precluded by the class action settlement, and on whether federal statutory law "evince[d] any intent to prevent litigants in state court—whether suing as individuals or as part of a class—from voluntarily releasing Exchange Act claims in judicially approved settlements." 516 U.S. at 378-82. In that case, there was no question as to identity of parties. There was no federal policy forbidding litigation or settlement of securities claims in the context of a Rule 23-type, opt-out class action, *see id.* at 385, and had the *Matsushita* plaintiffs opted out of the Delaware settlement they would have been free to pursue their Exchange Act claims in federal court, *see id.* (noting that some of the Delaware class action plaintiffs had excluded themselves from the settlement class and were "proceeding in federal court with their federal claims, unimpeded by the Delaware judgment"). Here, because of §216(b)'s requirement that employees affirmatively opt into an action on FLSA claims, the California HMCs are in the position of the plaintiffs who opted out of the Delaware class-action settlement with Matsushita. Plaintiffs here never became parties to *Lofton* for the purpose of adjudicating or settling their FLSA claims. *See Sandoz,* 553 F.3d at 916; *LaChapelle*, 513 F.2d at 289.

Precedential California authority makes clear that absent identity (or privity) of parties, *res judicata* does not bar the later action. *E.g.*, *Mycogen Corp.*, 28 Cal. 4th at 896; *Consumer Advocacy Group*, 168 Cal. App. 4th at 690. California regards the identity-of-parties requirement as being mandated by due process, *Consumer Advocacy Group*, 168 Cal. App. 4th at 690; *Clemmer*, 22 Cal.3d at 874, and *Matsushita* confirms that class action settlements must accord with due process if they are to bind absent class members. *Matsushita*, 516 U.S. at 378-79.[2]

In short, under the Full Faith and Credit Act and *Matsushita*, the FLSA's policy prohibiting resolution of FLSA claims in an opt-out, representative action must prevail. And the district court's holding that the *Lofton* settlement precludes plaintiffs here from pursuing their FLSA claims should be rejected.

## II.     Even If An Opt-Out Class Action Proceeding Can Ever Preclude Opt-In FLSA Claims, The *Lofton* Settlement Could Not Do So.

For the reasons discussed above, the plain language of §216(b) compels the conclusion that a Rule-23-style opt-out class action procedure may not ever be used to resolve FLSA claims. But even if that were not the case, the settlement at

---

[2] Below, Wells Fargo cited *Keeler v. AIG Domestic Claims, Inc.*, B226691, 2011 WL 6318485 (Cal. Ct. App. Dec. 19, 2011) (unpublished), as the sole authority for the proposition that California courts have held that FLSA claims can be settled, with preclusive effect, through an opt-out class action procedure. But *Keeler* has no precedential value in California law—as an unpublished opinion, it "must not be cited or relied on by a court or party in any other action." California Rule of Court 8.1115(a). (Note also that the rule's exception that an unpublished opinion may be cited when it "is relevant under the doctrine[] of . . . res judicata," California Rule of Court 8.1115(b)(1), does not apply here. Wells Fargo did not rely on *Keeler* for its own effect under the doctrine of *res judicata* but rather for its attempt to show what the law of *res judicata* in California is.) Moreover, *Keeler*'s holding conflicts with the California Supreme Court's holdings that there must be identity of parties for *res judicata* to apply and §216(b)'s prohibition against resolving FLSA claims on an opt-out, representative basis.

issue here should not have been applied to preclude the California HMCs' FLSA claims. At a minimum, employees are entitled to fair notice before they waive their FLSA claims. Due process rights also entitle them to adequate representation in the class action proceeding. Even *Lipnicki* appeared to recognize that preclusion may not be appropriate when, as here, it is established that the settlement proceeding was tainted with improprieties. For these and other independently sufficient reasons, even if an opt-out settlement could preclude FLSA claims, the *Lofton* settlement should not be allowed to do so.

Whether the state settlement precludes federal claims here is a question to be decided by this Court. *See Gonzales v. Cassidy*, 474 F.2d 67, 69 (5th Cir. 1973) (holding that prior class action had no *res judicata* effect on class members because they were inadequately represented by the class representative); *Lipnicki*, 2014 WL 923524 at *13-15 (deciding preclusive effect of a California class action on FLSA claims).

For a prior settlement to preclude FLSA claims, the reviewing court should be satisfied that "FLSA rights were not waived, but instead, validated." *Martin*, 688 F.3d at 257; *see also Bodle v. TXL Mortg. Corp.*, 788 F.3d 159, 165 (5th Cir. 2015) (noting "the purpose of the FLSA: namely, in this case, the protection of the right to overtime pay" and rejecting a prior settlement as preclusive when there was "no guarantee that the plaintiffs have been or will be compensated for the overtime wages they are allegedly due under the Act"). And any class action

settlement must accord with due process if is to bind absent class members. *Matsushita*, 516 U.S. at 378-79. For any class action judgment to preclude any later-filed claims, due process requires that the reviewing court determine that absent class members were adequately represented in the prior class action. *Gonzales*, 474 F.2d at 69. The improprieties that have come to light confirm that *Lofton* does not meet those tests.

### A. *Lofton* Class Members Did Not Knowingly Release Their FLSA Claims.

The record shows that this Court cannot be confident that *Lofton* class members understood they were compromising their FLSA claims in that California state case. The notice package sent to class members in *Lofton* consisted of three documents: a class notice, a claims form, and an exclusion form. ROA.13088-100. Of these three forms, the claims form was the only document that a class member was required to sign and return. Unless it was signed and returned to the claims administrator, the claims of the class member were released without compensation.

As detailed above in the Statement of the Case, the class notice itself described *Lofton* as involving only state-law claims. ROA.13092. And the only reference to the FLSA was the release provision's cryptic mention of "Wage Orders including any existing under the Fair Labor Standards Act of 1938." ROA.13094. A class member wading through this legalese boilerplate would not

have understood that the settlement released FLSA claims. *See Stokes*, 2014 WL 5826335, at *4 (refusing to approve proposed FLSA settlement employing an "expansive release, buried in a technical legal document that class members are unlikely even to see let alone get independent legal advice on" and that was "far beyond an appropriate tracking of the claims in the complaint").

The claims form contained no information about the scope of claims released under the settlement and made no reference to federal claims, including under the FLSA. ROA.13098-99. Not informed that the scope of released claims included FLSA claims, class members risked the unwitting release of their FLSA rights by submitting the claims form.

Those omissions seriously prejudiced the FLSA rights of class members. *See Stokes*, 2014 WL 5826335, at *4; *cf. e.g., Tijero*, 2013 WL 6700102, at *9 (settlement approval granted where class members advised by claims form that they were agreeing to an adjudication of their FLSA rights). Even a recent district court case from another circuit, which chose to adopt *Lipnicki*'s view that FLSA claims may be settled in an opt-out proceeding recognized the importance of clearly notifying class members that they risked waiving FLSA claims. *Pliego v. Los Arcos Mexican Restaurants, Inc.*, No. 14-CV-01686-RM-KMT, 2016 WL 471278, at *12 (D. Colo. Feb. 8, 2016) (approving class-action settlement including FLSA claims and noting that the class notice must "stat[e] clearly that

the federal claims for which release would be given upon the filing of a claim include those arising under the FLSA").

Complete and candid disclosure of the scope of released claims was especially critical because the *Lofton* complaint did not seek compensatory damages under the FLSA, nor even allege a claim under the FLSA. ROA.13117-22. Instead, the complaint alleged only violations of California state wage and hour laws. ROA.13119-22. Among those claims were two causes of actions alleging that by failing to pay plaintiffs overtime for hours worked in excess of forty per week as required by state and federal law, defendants committed an unlawful business practice in violation of the California Unfair Competition Law, Cal. Bus. & Prof. Code §§17200 *et. seq.* ROA.13119-20. Despite its reference to federal law, this claim "arises under California and not federal law." *Sullivan v. Oracle Corp.*, 254 P.3d 237, 247 (Cal. 2011). Thus, by purporting to release FLSA claims that were not alleged in the complaint, defendants violated the requirement that release language in wage-and-hour cases must "appropriately track the extent and breadth of [p]laintiffs' allegations." *Tijero*, 2013 WL 60464, at *9.

**B.    There Is No Showing That Any Court Has Scrutinized The *Lofton* Settlement For Fairness As To FLSA Claims.**

A court must scrutinize an FLSA settlement to determine if it is "fair and reasonable." *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199, 203 (2d Cir. 2015); *see also Bodle*, 788 F.3d at 165; *Martin*, 688 F.3d at 257; *Lipnicki*, 2014

WL 923524 at *16.  This is because "FLSA provisions are mandatory, not subject to negotiation or bargaining between employers and employees, and not subject to waiver."  *Ruddell v. Manfre*, No. 3:14-CV-873-J-34MCR, 2015 WL 7252947, at *3-4 (M.D. Fla. Nov. 17, 2015) (citing *Lynn's Food Stores*, 679 F.2d at 1352).  An FLSA settlement should, *inter alia*, "compensate each class member for the actual overtime underpayment suffered" unless "such compensation is impossible or impracticable."  *Millan v. Cascade Water Servs., Inc.*, 310 F.R.D. 593, 613 (E.D. Cal. 2015).

There is no assurance that such scrutiny was applied by the California *Lofton* trial court as to class members' FLSA claims.  As indicated by the *Lofton* class notice and complaint, it was at best unclear if FLSA claims were even being addressed in the *Lofton* litigation.  And in any event, as discussed further below, the misconduct, concealment, and inadequate class representation that tainted the *Lofton* proceedings would have deprived the California court of the opportunity to make a well-informed fairness determination.

## C.  The Misconduct That Tainted The *Lofton* Proceeding Means *Lofton* Cannot Preclude The FLSA Claims.

The adequacy of the process used in an earlier state class action is critical to whether a federal court should recognize a settlement as a fair compromise of FLSA claims and be given preclusive effect.  *Lipnicki* recognizes this very principle, discussing due process concerns in state class actions and noting: "The

California class settlement was negotiated by class counsel, who had a duty to represent the interest of all class members, and approved by a court after a fairness hearing." 2014 WL 923524, at *13-15.

Judge Costa was able to rely on the fairness determination in the prior judicial proceeding as an indication that the *Lipnicki* plaintiffs had fairly compromised their FLSA claims. *Id.* at *14 (noting that the court approval made it "an easier call" than the private settlement in *Martin*). Crucially, *Lipnicki* noted the lack of any hint that the process in the prior class action was deficient. "Because there is *no indication* that the procedures followed in the California case—including the fairness determination—were improper, this Court must give the settlement legal effect." 2014 WL 923524, at *16 (emphasis added); *accord Kuncl v. IBM Corp.*, 660 F. Supp. 2d 1246, 1248 (N.D. Okla. 2009) (no indication of deficiencies in prior litigation, as the facts relating to it were "not in dispute").

Here we have the opposite. The record is irrefutable: the *Lofton* settlement was tainted by impropriety, including gross failures by class counsel, such that absent class members were left effectively unprotected.

Beyond that, the party seeking preclusive effect was in on the fraud. It would be inequitable, to say the least, for a culpable wrongdoer to benefit from a state judgment stained by its own conduct. Wells Fargo knew of and facilitated the conduct of class counsel that constituted inadequate representation. As detailed above: Wells Fargo agreed to the $6 million side settlement at mediation. Like

class counsel, Wells Fargo's counsel told the California trial court that the ILG plaintiffs would opt out of the settlement class. And Wells Fargo participated in the fraudulent supplemental "release" from the ILG plaintiffs, whereby Wells Fargo purported to pay $6 million to settle $450,000 worth of claims.

The FLSA "forbids waiver of the right to statutory wages or to liquidated damages" because it recognizes "the unequal bargaining power between employers and employees." *Bodle*, 788 F.3d at 162-63. In *Lofton*, the employer and the purported representative of the employees were cooperating to ram through a settlement in which class members got short changed while lawyers pocketed millions. The protective purposes of the FLSA, *see, e.g.*, *Bodle*, 788 F.3d at 165, are not served by allowing a complicit party to cut off later claims through a discredited settlement.

### D. Applying *Lofton* To Preclude The FLSA Claims Violates Due Process.

Further, under the law governing class actions generally, the admitted improprieties in the *Lofton* settlement prevent any preclusive effect, as it would violate due process because absent class members were inadequately represented.

"[U]nless the court applying res judicata can conclude that the class was adequately represented in the first suit," due process is violated when the judgment in a class action is given *res judicata* effect as to the absent class members. *Gonzales*, 474 F.2d at 74 (citing *Hansberry v. Lee*, 311 U.S. 32 (1940)). "[O]ne is

not bound by a judgment in personam in a litigation in which he is not designated as a party" except in a class action where he "has his interests *adequately represented.*" *Richards v. Jefferson Cty., Ala.*, 517 U.S. 793, 798 (1996) (emphasis added); *accord, e.g.*, *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 810-12 (1985); *Hunter v. Transamerica Life Ins. Co.*, 498 Fed. Appx. 430, 435-36 (5th Cir. 2012) (unpublished).

The Court cannot conclude that the California HMCs were adequately represented in *Lofton*, certainly not on summary judgment, when Wells Fargo had to show that no genuine issues of material fact exist. *Gonzales* explains:

> To answer the question whether the class representative adequately represented the class so that the judgment in the class suit will bind the absent members of the class requires a two-pronged inquiry: (1) Did the trial court in the first suit correctly determine, initially, that the representative would adequately represent the class? and (2) Does it appear, after the termination of the suit, that the class representative adequately protected the interest of the class?

474 F.2d at 72. The *Lofton* court may well have erred in deciding that plaintiff Dawn Lofton would adequately represent the class, but here we need only look to the second prong of the *Gonzales* inquiry. That prong is backward looking and "involves a review of the class representative's conduct of the entire suit." *Id.*

Named plaintiff Lofton had the duty to "vigorously and tenaciously protect[] the interests of the class." *Id.* at 75. That did not happen. Reviewing "the class representative's conduct of the entire suit," *id.* at 72, shows why affording preclusive effect to the settlement will violate due process. Throughout the case,

class counsel has failed to protect the interests of the class, as detailed above. After representing to the court that the 600 ILG plaintiffs would opt out, class counsel stood idly by while those plaintiffs stayed in the suit and submitted claim forms, diluting the recovery for the rest of the class. There is no indication that class counsel made any effort to have the additional $6 million Wells Fargo was willing to secretly pay in settlement allocated among the entire class. And, again, class counsel stood silent when they knew that ILG was pocketing $5.5 million of that money as unearned, unapproved legal fees, to the detriment of the entire class "represented" by class counsel (which included the subset of ILG-client class members).

When a class representative fails to pursue all remedies available to the class, representation is inadequate. In *Gonzales*, the class representative was inadequate because, after "he obtained individual relief," he failed to prosecute an appeal on behalf of the absent class members who got no relief from the judgment. *Id.* at 76. At least one of the improprieties in *Lofton* is similar to the failure to appeal in *Gonzales*. After appeal and remand, *Lofton* Class Counsel failed to pursue an increased recovery for absent class members. The state court ultimately held that the misappropriated $6 million should be apportioned to the entire class. Class counsel never even argued for that relief for the class. (In fact, MDL Lead Counsel, on behalf of Spotts and Sebring, were the only participants urging that relief for the class.) The fact that the state court determined that the absent class

members were entitled to that remedy highlights the failure of representation—the class members had a meritorious argument to advance but their class representative made no attempt to advance it. Indeed, all indications were that class counsel was prepared to accede to a selective distribution benefiting only the ILG plaintiffs.

Quite simply, no one was looking out for the interests of the *Lofton* class. Certainly the Court can have no confidence that class counsel adequately negotiated a fair bargain for settling the class's FLSA claims. *See Bodle*, 788 F.3d at 165. Further, as noted above, the notice sent to class members did not fairly inform them that FLSA claims were at stake, and thus applying *Lofton* to preclude FLSA claims would mean the notice failed to "describe the action and the plaintiffs' rights in it." *Shutts*, 472 U.S. at 812. Because of the inadequate representation, the *Lofton* judgment cannot bind absent class members, and it is a due process violation to accord that judgment preclusive effect in this case. *See Richards*, 517 U.S. at 798; *Shutts*, 472 U.S. at 810-12; *Hunter*, 498 Fed. Appx. at 435-36; *Gonzales*, 474 F.2d at 74.

In an October 13, 2015 filing below, Wells Fargo complained that plaintiffs' due process argument was a "new attack." ROA.14371. That complaint ignores that (1) movant Wells Fargo had the burden of proving its preclusion defense, and its summary judgment argument always relied on *Matsushita*, which makes clear that a class action settlement must accord with due process to preclude absent class members' claims, 516 U.S. at 378-79; (2) several facts going to inadequate

representation only came to light during the 2015 proceedings in the *Lofton* court; and (3) indeed, *Lofton* Class Counsel's latest failure to pursue distribution of the $6 million to the entire class only occurred in the 2015 proceedings.

Wells Fargo also noted that the average payment in the *Lofton* settlement slightly exceeded that to opt-in plaintiffs from other states in this MDL. ROA.14372 & n.3. But, as Wells Fargo acknowledged, *Lofton* involved a longer class period. *Id.* Additionally, because the MDL settlement excluded California HMCs, there can be no certainty what the average payment would have been if those plaintiffs were included. Moreover, there is no justification to reward Wells Fargo for its recalcitrance in recognizing HMCs substantive FLSA rights to overtime compensation.

### E.    Because Of The Pending Appeals, *Lofton* Does Not Have The Requisite Finality For Preclusion.

Wells Fargo also argued that the district court should overlook any "potentially viable due process issue" by relying on the *Lofton* court's determination not to modify or vacate the prior judgment. ROA.14377. But that very determination is subject to an appeal, which was pending when the district court ruled on Wells Fargo's summary judgment motion and is still pending today. And a judgment is not final for *res judicata* purposes under California law until the time to appeal has expired or any timely appeals have run their course. Appeals "suspend the force of the order as a conclusive determination of the rights of the

parties . . . since finality is not accorded a judgment until affirmance in the event of an appeal. *Caminetti v. Guar. Union Life Ins. Co.*, 22 Cal. 2d 759, 766 (1943).

When the district court here entered summary judgment, multiple appeals from the *Lofton* court's July 16, 2015 order, were pending. *Lofton v. Wells Fargo Bank N.A.* (Case No. A146282 (Cal. Ct. App.) app. pending), *available at* http://goo.gl/NLQPEO (last visited March 7, 2016). And *Lofton* appeals are still pending today, *id.*, each of which has the potential to alter the settlement.

Appeals by ILG and class member Linda Summers were and are still pending. *Id.* Summers moved to have the prior *Lofton* judgment vacated, and the *Lofton* court's July 16, 2015 order denied that motion. ROA.14079, 14082. Summers's appeal could thus result in vacatur of the prior *Lofton* settlement judgment. Summers's appeal thus goes directly to the finality of the settlement and also to the due process determination.

ILG's appeal also relates to the terms of the entire settlement. The July 16 order calls for the bulk of the $6 million side deal to be allocated among all the *Lofton* class members who submitted claim forms. ROA.14082. That order represents an alteration to the entire underlying judgment because it approved a settlement of only $19 million. If ILG's appeal fails, *Lofton* class members may receive additional distributions; if ILG's appeal succeeds, they likely will not. ILG's appeal is thus also relevant to both finality and due process.

### F.    Summary Judgment Was Improper.

At a minimum, these facts about the *Lofton* proceeding show that summary judgment was improper.  Preclusion is an affirmative defense, on which summary-judgment movant Wells Fargo had the burden of proof.  *Taylor*, 553 U.S. at 907. There remain numerous genuine issues of material fact as to whether *Lofton* provided a fair and reasonable settlement of FLSA claims, with adequate notice to class members, and accorded with due process.

### III.   At The Very Least, The Claims Of The 233 California HMCs Who Did Not Submit Claims Forms In *Lofton* And Received No Compensation Could Not Be Precluded.

As shown above, none of the 1,516 opt-in plaintiffs in this action could have had their FLSA claims released or precluded because the statutory requirements for FLSA settlements were not followed. The claim forms submitted in *Lofton* could not satisfy §216(b)'s written-consent requirement, and, in any event, none of them were filed in the *Lofton* court. And there are 233 opt-in plaintiffs here who did not even submit claim forms or receive any compensation in the *Lofton* settlement. ROA.13086-87. At the very least, the Court should recognize that *Lofton* could not possibly release or preclude the FLSA claims of those plaintiffs.  *Cf. Bodle*, 788 F.3d at 165 (rejecting prior settlement as preclusive when there was "no guarantee that the plaintiffs have been or will be compensated for the overtime wages they are allegedly due under the [FLSA]").

## CONCLUSION

For these reasons, the Court should reverse the judgment of the district court and remand for further proceedings.

Respectfully submitted,

/s/R. Paul Yetter
R. Paul Yetter
Reagan W. Simpson
Christian J. Ward
YETTER COLEMAN LLP
909 Fannin Street, Suite 3600
Houston, Texas 77010
Tel. (713) 632-8000
Fax (713) 632-8002

Rhonda H. Wills
WILLS LAW FIRM, PLLC
1776 Yorktown, Suite 570
Houston, Texas 77056
Tel. (713) 528-4455
Fax (713) 528-2047

ATTORNEYS FOR APPELLANTS

## CERTIFICATE OF COMPLIANCE

1.     This brief complies with the type-volume limitations of Federal Rule of Appellate Procedure 32(a)(7)(B) because this brief contains 13,960 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(a)(7)(B)(iii).

2.     This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft® Office Word 2010 in 14-Point Times New Roman font.

Date:  March 7, 2016                    /s/R. Paul Yetter
                                        R. Paul Yetter

CERTIFICATE OF SERVICE

I certify that the Brief of Appellants was filed with the Court via the court's electronic filing system, on the 7th day of March, 2016, and an electronic copy of the brief was served on all counsel of record, as listed below, via the court's electronic filing system on the same date:

David B. Jordan
April Nicole Love
LITTLER MENDELSON, P.C.
1301 McKinney Street
Suite 1900
Houston, Texas 77010
Tel. (713) 652-4784
Fax (713) 951-9212
djordan@littler.com
alove@littler.com

Lindbergh Porter
Mary D. Walsh
Philip L. Ross
LITTLER MENDELSON, P.C.
650 California Street, 20th Floor
San Francisco, California 94108
Tel. 415-433-1940
lporter@littler.com
mdwalsh@littler.com
plross@littler.com

David Scott Warner
LITTLER MENDELSON, P.C.
900 Third Avenue
7th Floor
New York, NY 1022
Tel. (212) 583-9600
Fax (212) 832-2719
dwarner@littler.com

Keith J. Rosenblatt
Michael T. Grosso
LITTLER MENDELSON, P.C.
One Newark Center, 8th Floor
Newark, New Jersey 07102
Tel. (973) 848-4700
krosenblatt@littler.com
mgrosso@littler.com

Darren Mason Mungerson
LITTLER MENDELSON, P.C.
321 North Clark Street
Suite 1000
Chicago, Illinois 60654
Tel. (312) 372-5520
Fax (713) 896-5929
dmungerson@littler.com

Breanne Sheetz Martell
Daniel L. Thieme
LITTLER MENDELSON, P.C.
One Union Square
600 University St., Suite 3200
Seattle, WA 98101
Tel. (206) 623-3300
bsheetz@littler.com
dthieme@littler.com


/s/Reagan W. Simpson
Reagan W. Simpson